## The People v. Charles Clark.

An information for a conspiracy to do an unlawful act must set forth the unlawful thing agreed upon, but it need not specify the means to be resorted to for that purpose.

And therefore an information which charged defendant and a person unknown with having conspired "by divers false pretenses, subtle means and devices to obtain and acquire to themselves of and from one W. a sum of money, to wit: the sum of ten dollars, of the moneys of said W., and to cheat and defraud him the said W. thereof," was held sufficient.

It is not essential to the offense in such case that the cheat designed be by means of a token, writing, or similar device.

Nor is it necessary that the means should be of any specific character. The crime may be complete notwithstanding the conspirators leave the particular means by which the fraud is to be accomplished to be determined by circumstances.

Under an information for a conspiracy to defraud, if the conspiracy is proved the case is made out, whether any fraud was committed in pursuance of it or not.

It is not essential that the pretenses by which a fraud is accomplished be expressed in words. Falsehood when deliberately acted is the same as spoken falsehood.

*Heard May 2nd. Decided June 3d.*

On Exceptions from the Recorder's Court of Detroit, where defendant was convicted on an information of which the following is a copy:

"*State of Michigan, County of Wayne: January Term, A. D.* 1862; *Recorder's Court of the City of Detroit.*

In the name of the People of the State of Michigan, I, David E. Harbaugh, Prosecuting Attorney in and for said county of Wayne, who prosecute for and on behalf of the People of said State in said Court, come now here and give the Court to understand and be informed, that one Charles Clark, and a certain other person to the Prosecuting Attorney, aforesaid, unknown, late of said city, on the 8th day of January, in the year of our Lord one thousand eight hundred and sixty-two, at the said city of Detroit, unlawfully, falsely, deceitfully, and fraudulently, did combine, conspire, confederate, and agree together, by divers false pretenses, subtle means and devices, to obtain and acquire to themselves, of and from one John M. Whelpley, a sum of money, to wit, the sum of ten dollars, of the moneys

THE PEOPLE v. CLARK.

of said John M. Whelpley, and to cheat and defraud him, the said John M. Whelpley, thereof: The said Charles Clark and the other person, unknown as aforesaid, in pursuance of, and according to said combination, conspiracy, confederation and agreement between them, as aforesaid had, did, on the 8th day of January, A. D. 1862, at the city of Detroit aforesaid, by said divers false pretences, subtle means and devices, unlawfully, falsely, deceitfully and fraudulently, obtain and acquire to themselves, of and from the said John M. Whelpley, and of the moneys, goods and chattels of the said John M. Whelpley, two pieces of current gold coin of the United States of America, each piece of the value of five dollars, with intent to cheat and defraud the said John M. Whelpley thereof, to the great damage of the said Whelpley, and contrary to the form of the statute in such case made and provided, and against the peace and. dignity of the People of the State of Michigan.

DAVID E. HARBAUGH,
*Prosecuting Attorney of Wayne County, Michigan.*"

*J. Patchin & J. L. Chipman* for defendant:

1. The evidence admitted to show that the defendant had not, to the knowledge of the witness, shipped hogs over the Great Western Railway, was improper. Its object was to show he had been guilty of false pretences in stating that he was a hog dealer, and had been to see after shipping some hogs at Windsor. This and the other similar testimony was an effort to prove the falsity of what the prisoner said, while in fact is does not relate to any thing he did say.

2. The Court erred in refusing to charge, that in order to a conviction the jury must find that the defendant used either unlawful means to borrow the money, or that the borrowing itself was illegal. The conspiracy is sought to be established by the means used or by the act done, and the jury must find one or the other unlawful.

3. The Court erred in refusing to charge that the "cheat" referred to in the indictment is a cheat either at common law or by statute, which requires a false token, writing, &c. — *Alderman's case*, 4 *Mich.* 432, *and cases cited.*

4. In an indictment for a conspiracy, it is necessary specifically to set forth the intended act, when it has not a common law name to import its nature, with as much precision as would be necessary in an information for the perpetration of it. The information here should set forth the charges with as much certainty as if it were for obtaining money by false pretenses.—5 *Barr*, 60; 4 *Mich.* 432.

5. The indictment does not set forth a conspiracy to do an unlawful act. The pretences, devices, &c., not being particularly stated, must be regarded as omitted, and the terms *cheat and defraud* do not, *ex vi termini*, imply an unlawful act which may subject the party to indictment and punishment.

*C. Upson, Attorney General,* for the People:

The evidence which was objected to was proper to show the false character which the prisoner and his accomplice assumed in their transactions with Whelpley, and the lying nature of the representations they made to him, while acting in concert, to obtain from him the money, and, in connection with the other evidence, to show the conspiracy into which they had entered to cheat and defraud him of his money.

The Court was correct in refusing to charge, that it must appear either that the defendant used unlawful means to borrow the ten dollars, or that the act of borrowing was of itself unlawful. The gist of the offense was the conspiracy charged, and whether the means actually used were lawful or unlawful, or whether any means were used or planned, was immaterial.—2 *Bish. Cr. L:* §§ 166, 169, to 174; *Whart. Cr. L.* §§ 2297, 2298; 2 *Russ. on Cr.* 691, 692; 1 *Mich.* 216; 4 *Mich.* 433.

The information is sufficient: 2 *B. & Ald.* 204; 5 *Q. B.* 49; 7 *Q. B.* 782; 9 *Q. B.* 824; 11 *Q. B.* 245; 25 *E. L. & E.* 577; 18 *E. C. L.* 205; 2 *Russ. on Cr.* 691, 692; 3 *Chit. Cr. L.* 951; *Whart. Cr. L.* § 2297 *to* 2305; 2 *Bish. Cr. L.* § 171; 3 *Harris,* 272; 11 *Harris,* 355; 5 *Harr. & J.* 317; 8 *S. & R.* 420, 422; 1 *Dev.* 357; 2 *Hill S. C.* 282; 15 *N. H.* 396; 25 *Vt.* 415; 22 *Ill.* 314; *Whart. Prec.* 611 *and* 607, *note b,* 2d *Ed.*; *Train & Heard Prec.* 174; 3 *Zab.* 44; 2 *Mich.* 223; 9 *Cow.* 578; 1 *Mich.* 216.

CAMPBELL J.:

The defendant was charged with having conspired with a person unknown, "by divers false pretences, subtle means and devices, to obtain and acquire to themselves, of and from one John M. Whelpley, a sum of money, to wit, the sum of ten dollars, of the moneys of said John M. Whelpley, and to cheat and defraud him, the said John M. Whelpley, thereof."

It is claimed that this information is defective in not setting forth any conspiracy within the requirements of law. The principal argument was that, unless the means to be resorted to were set out, the charge is not of any crime, because it is alleged the object alone was not criminal.

There can be no doubt that a conspiracy to do a lawful act is not punishable, unless that act is to be accomplished by unlawful means. In such a case, unless the means are set out, the indictment or information charging a conspiracy merely to accomplish a lawful thing, would be insufficient; for every criminal charge must show upon its face what criminality is alleged against the defendant, and none can be proved where none is alleged.

It has been settled therefore without contradiction, that in every indictment for conspiracy the unlawful thing agreed upon must be set forth. If the end be unlawful, that and that only need be alleged; but if the end be lawful, then the unlawful means must appear.

The question then arises, whether it appears upon the face of this information, that what the defendants agreed upon amounted to a criminal conspiracy. This may be very easily tested in the case before us. It is charged that the agreement was to obtain from Whelpley, by false pretences, ten dollars, and to cheat and defraud him of it.

Our statutes provide that it shall be a punishable crime to obtain from any person any money or other valuable thing by any false pretence, with intent to defraud or cheat him.— *Comp. L.* § 5783.

The agreement set up in the information in this case embraces all the elements of the statutory crime, and is therefore an agreement to commit the crime of obtaining money under false pretences. This being the design, and this design itself being criminal if agreed upon by conspirators, whether carried into effect or not, there are no authorities which require any further *allegations.* If no such act were an indictable offense, there might be room for the argument that the means should be alleged. There may perhaps be some conflict on this subject, as applied to pecuniary frauds, but it is needless to discuss it here, as the means and the end, under our statute, form, when combined, an indictable offense. Nor is it necessary that the means should be of any specific character. The varieties of fraud are innumerable, and when it is agreed to cheat another of his property, we are not bound, in the face of common experience, to assume that any particular devices must have been agreed to be resorted to, and that any addition to them suggested by the ingenuity of the operators must be presumed beyond the design. It is sufficient for this case if we can conceive it possible for conspirators to leave the particular means by which a fraud is to be accomplished to be determined by circumstances; and we certainly regard this as not only possible, but very probable in most cases. The rules which govern allegations in indictments for a completed offense, can not

have any bearing upon a conspiracy to commit it, where the conspirators are equally chargeable whether they fail or whether they succeed.

We see no defect in the information.

It is alleged as error that the Court refused to charge that the cheat referred to in the information must be by means of a token, writing or similar device. We do not think our statute on false pretences susceptible of any such confined construction. It was evidently designed to reach every variety of pretences.

It was also objected that the Court refused to charge, that it must appear that the defendant used unlawful means to borrow the ten dollars, or that the borrowing was itself unlawful. This was not an indictment for the fraud, but for the *conspiracy* to defraud. If the conspiracy were proved, the case would be made out, whether any fraud were afterwards committed or not. It is true that a conspiracy is generally proved by inference from the acts of the conspirators. This, however, is not necessarily the case. Had it distinctly appeared from the case before us that there was no other proof here, it may be doubtful even then whether the request would be entirely correct; but as we consider the charge as given as covering the entire ground, the correctness of the charge as given becomes the only material inquiry concerning the law laid down to the jury. And the remark made by the Court, that the mere telling of lies to obtain property, while not enough to make out an offense, was not a material consideration in the case at bar, may be disposed of in the same way.

It had appeared in the case—or, rather, there was evidence tending to show—that the defendant had induced Whelpley, who had crossed with him from Windsor, to believe that he had just been to Windsor to see about some hogs which he wished to ship, and asked Whelpley to go with him to the office to see about the freight,

and why the hogs were not shipped. He had previously asked if Whelpley was going to Chicago, and said he would accompany him to that place. Defendant took Whelpley to the Merrill Block, where the other alleged conspirator came up and said he had been looking for Clark. Clark asked if he had shipped the hogs, and on being told that he had done so, said that he would pay the freight, and took out his pocket book and asked if the other could change a hundred dollar bill. This person said he would go up into the office and see. He went up stairs into the Merrill Block, returned and said he could not. Clark asked Whelpley if he could change the bill. He said he could not. Clark then asked Whelpley to lend him ten dollars, and he would pay him when he got to the depot, where he would get the bill changed. After getting the money, Clark and the other went up stairs for the alleged purpose of getting the bill receipted, asking Whelpley to wait. After waiting a quarter of an hour he left. Other witnesses testified to the suspicious conduct of both the alleged confederates. It was shown there was no office in Merrill Hall rented to any person engaged in shipping hogs. Clark when arrested had $30 in good bills, and a hundred dollar bill on a broken bank. Other evidence appears, and we are not informed by the record whether all that was given was set forth.

If any fraudulent conspiracy existed, it was upon the theory of the prosecution carried out by inducing Whelpley to believe that Clark was here for the legitimate business of sending forward his produce; that he had actually forwarded it; that it was worth enough to have the freight from Windsor amount to ten dollars; that the office was in the Merrill Block where he was going to pay the freight; that the stranger had authority to collect and receipt for it; that Clark had a hundred dollars in one bill which he could and would have changed at the depot to repay the loan, and that he would immediately

accompany Whelpley to the depot where both must go to enter upon their contemplated journey to Chicago. If the jury found any fraudulent pretense—as of course from their verdict they must have done if they inferred the conspiracy from these acts—the case shows that it was in making Whelpley believe that Clark was a business man who had property in transit to which he was attending, and had a bill of a hundred dollars in his pocket available to repay immediately such a loan as he made. If these pretenses were false, and if they actually deceived Whelpley, and were designed to defraud him out of the money he advanced, they amount to misrepresentations of existing and material facts, and come clearly within the mischief of the law. Nor do we think it could make any difference whether they were all expressed in words. Falsehood when deliberately acted is the same as spoken falsehood. The facts relied on for conviction went very far beyond immaterial lies, and also tended to show that both Clark and the stranger were guilty.

The charge of the Court was as follows:

"The defendant is charged with conspiring and combining with a person, unknown to the People, to defraud one Whelpley, out of a sum of money. To constitute an indictable conspiracy, there must be a combination of two or more persons, by concert of action, to accomplish a criminal or unlawful purpose, or by means, criminal or unlawful, to accomplish a purpose not in itself criminal. The charge here is *conspiracy*. It is not a charge for obtaining money by false pretenses; it is for *conspiring* and *combining* with this unknown person, by means of false pretences, to do just what is alleged to have been done that the prisoner is on trial before you. The fact that money was obtained of Whelpley, in the manner related, is offered as evidence of the conspiracy, which is alleged to have been formed before ; and not that *this* was the conspiracy. If the prosecution is correct in its view of the case, and the getting of the

money was the *object* of the conspiracy, and not the conspiracy itself, to convict you will have to find: That the prisoner and a person unknown to the People, entered into a conspiracy to defraud, by means of false pretences, the witness Whelpley out of his money. The offense was as perfect before the money was obtained, as it was afterwards, if the combination and conspiracy existed to do what is alleged to have been done, namely, the getting of the money, by means of the unlawful devices, etc., as charged in the information."

We think there was nothing in this charge which could possibly mislead the jury. It defined the offense properly, and gave the jury all necessary instruction concerning the character of the acts constituting it.

Some objections were taken to the admissibility of testimony which it becomes necessary to notice. Charles McCabe, who had sworn that he was a ticket agent of the Great Western Railway at Windsor, was asked whether his business was such as to give him knowledge of persons who ship hogs on that railway, and whether Clark had ever to his knowledge shipped hogs by it. These questions were objected to, but he was allowed to answer, and did answer, that his business gave him knowledge of persons shipping hogs over the road, and that he did not know of Clark's shipping any.

We think the testimony admissible. It was competent to prove the non-shipment of hogs from Windsor, by inquiring separately concerning all the channels of transportation. It may have appeared that at that season of the year there was no other outlet from Windsor. If there were other outlets, similar questions to those acquainted with their business were the proper means of proof as to them; and we do not perceive how else such a negative matter could be proved. As no Court in Michigan can judicially know, however strongly its members may suspect, that in midwinter the railway is the only available outlet for freight

from Windsor, we can not assume, in the absence of any request to charge, or other reference to the defect, that the prisoner was convicted without proof on this material point.

The same remarks will apply to the evidence offered that no office in the Merrill Block was rented for such purposes as represented by Clark and his associate. The evidence was admissible, and very significant. No question appears on the record whereby its conclusiveness or effect seems to have been involved in any legal argument. We can make no presumption of error where ' error does not appear.

The conviction is good, and the Recorder's Court must be instructed to proceed to judgment on it.

The other Justices concurred.