State vs. Crowley and others.

CRIMINAL LAW: CONSPIRACY. *(1, 2) Form of indictment; whether the means to be used must be alleged. (3, 4) Conspiracy to obtain money under false pretenses: Essential condition of the crime.*

1. In an indictment or information for a conspiracy to do a lawful act by criminal means, the means must be particularly set forth. But if the conspiracy be to do an act in itself unlawful (whether at common law or by statute), the means by which it was to be accomplished need not be stated.

2. Thus, where the object of the conspiracy, as charged, was to obtain money from a certain person " by false pretenses, and by false and privy tokens and subtle means and devices," it was not necessary to state more specifically such pretenses, tokens or devices; the obtaining of money on false pretenses being a crime by statute.

3. In such a prosecution, if it appears that the transaction on the part of the person from whom the money was obtained, or from whom defendants conspired to obtain it, would have been *unlawful* in case the representations of the defendants had been *true*, there can be no conviction.

4. Thus, where money was paid by A. to certain conspirators to get possession of boxes, falsely represented by the latter to contain counterfeit money, with a view to uttering the same, and a further sum was paid to one of the confederates who was a constable, to prevent a threatened arrest of A. for having such counterfeit money in possession (the boxes in fact containing only saw-dust), the confederates cannot be convicted upon these facts of a conspiracy to obtain money of A. upon false pretenses.

REPORTED from the Circuit Court for *Monroe* County.

The defendants were tried and convicted upon an information charging them with a criminal conspiracy. The circuit court suspended judgment, and reported the case to this court pursuant to the statute (R. S., ch. 180, sec. 8), for the determination of the following questions of law:

1. Does the first count of the information on which the defendants were tried, charge a criminal offense?

2. Does the evidence in the case support the charge of conspiracy as contained in said first count?

It is charged in said first count of the information, that, on the day and at the place therein specified, the defendants, " wickedly and unjustly devising and intending one Daniel Burke to defraud and cheat of his money and property, did then and there unlawfully, falsely and fraudulently conspire, combine, confederate and agree together and among themselves, to get and obtain, knowingly and designedly, by false pretenses and by false and privy tokens and subtle means and devices, of him the said Daniel Burke, one hundred and ten dollars in money, the money and property of him the said

Daniel Burke, of the value of one hundred and ten dollars, with the intent then and there to cheat and defraud him the said Daniel Burke, of the said money, against the peace and dignity of the state of Wisconsin."

The testimony on the trial to which the second question relates, is substantially as follows: The defendant *C. Crowley* solicited Daniel Burke to pay him fifteen dollars for one hundred and fifty dollars of counterfeit money. Burke agreed to purchase the same, and paid *Crowley* the fifteen dollars therefor. The latter enclosed the money in a letter to some person (who, the prosecution claims, is the defendant *James Crowley*), and sent the letter by mail. This occurred at Sparta, Wis. After some days, Burke received a letter mailed at Lake City, Minnesota, and signed " C. O'Donnell," acknowledging the receipt of the fifteen dollars, and promising to forward "*the goods*" in a few days. About a month later, Burke received another letter similarly signed, and mailed at Jefferson, Wis., informing him that the writer had sent him by express to Dover (a railway station near Sparta) a box marked " Condition Powders," containing " $1,000 of various denominations with full directions how to pass it, in print," and requiring Burke to pay the express agent twenty dollars, and to remit the balance, $65, as soon as he could. Burke thereupon went to Dover, found the box there, paid the agent the charges and $20, took the box home, opened it, and found that it contained nothing but grass and a cigar box. He informed *C. Crowley* of the contents of the box, and the latter promised to make it all right, and to write " the company " about it.

A week or two later, Burke received another letter, mailed at Oconomowoc, and signed as were the others, " C. O'Donnell," in which the writer indulges in some doubts as to the truthfulness of Burke's story, but informs him that he has shipped $1,000 more to Greenfield for him. This letter required Burke to pay $25 down, and proposed to wait for the balance of $75, and the balance of $65 due on the first trans-

action, till he should "realize it out of the business." Burke went to Greenfield, paid the $25 and express charges, obtained the box, and returned with it to Sparta. *C. Crowley* met him there at the depot, and as they were walking up town together, having the box with them, they were arrested by the defendant *Carnahan*, who was a constable. *Carnahan* accused them of having counterfeit money in the box, and threatened to expose them and have them punished; but, after some negotiation, he agreed to settle the matter and keep silent for $150. Burke agreed to pay $50, and *C. Crowley* the remaining $100. A few days later, Burke paid the $50 to *Carnahan*, took the box home, opened it, and found only saw-dust and scraps of paper.

The foregoing are all the facts essential to the determination of the second question; although it may be stated as part of the history of the case, that subsequently, by similar devices, among which was another empty package and another arrest, and in which at least one of the *Crowleys* participated, the confederates (whoever they were) succeeded in obtaining from Burke two hundred dollars more.

Burke purchased the counterfeit money for the purpose and with the intention of uttering and passing it as good money. It is claimed by the prosecution, and the evidence tends to prove, that the letters were written and the boxes forwarded by the defendant *James Crowley*.

Briefs were filed for the defendants, signed respectively by *Hall & Skinner*, and by *Cameron, Losey & Bunn;* and the cause was argued orally in their behalf by *Charles W. Bunn* and *D. Hall.* They argued substantially as follows:

1. An information for a conspiracy to obtain money by false pretenses must set out the means to be used. *Comm. v. Eastman*, 1 Cush., 189; *Comm. v. Shedd*, 7 id., 514; *Comm. v. Hunt*, 4 Met., 111; *Lambert v. The People*, 9 Cow., 578; *State v. Hewett*, 31 Me., 396; *State v. Roberts*, 34 id., 320; *Comm. v. Prius*, 9 Gray, 127; *Comm. v. Wallace*, 16 id., 221;

*Alderman v. The People*, 4 Mich., 414; *State v. Potter*, 28 Iowa, 554; *State v. Stevens*, 30 id., 391; *State v. Jones*, 13 id., 269; *March v. The People*, 7 Barb., 391; *Hartmann v. The Comm.*, 5 Barr, 60.   2. The statute against false pretenses applies only to legitimate trade and business (*People v. Clough*, 17 Wend., 351), and certainly was not intended to protect criminal contracts, or parties engaged in criminal transactions. *People v. Stetson*, 4 Barb., 151; *People v. Williams*, 4 Hill, 9; *McCord v. The People*, 46 N. Y., 470.   3. Where the exercise of common prudence and caution would enable one to avoid being imposed upon by the false pretenses, they are not within the statute.   *State v. Green*, 7 Wis., 676; *State v. Simpson*, 3 Hawks, 620; *People v. Williams, supra; People v. Crissie*, 4 Denio, 525; *Comm. v. Drew*, 19 Pick., 179; *Comm. v. Norton*, 11 Allen, 266.   4. The statutory offense is the use of false pretenses "with intent to defraud."   Burke was not defrauded, but greatly benefited, by getting what he actually got instead of what he expected.   5. A false pretense under the statute must relate to a past event or existing fact; while here there was merely a promise to do a future criminal act, and a breach of that promise.   *Regina v. Goodhall*, R. & R., 461; *Rex v. Oates*, 29 Eng. L. & E., 552; *Dillingham v. The State*, 5 Ohio St., 280; *Comm. v. Burdick*, 2 Barr, 163; *Comm. v. Drew, supra*.

The *Attorney General* and *J. M. Morrow*, District Attorney of Monroe county, for the state:

1. The obtaining of money or goods under false pretenses is a crime (R. S., ch. 165, sec. 38); a combination or confederacy to commit such crime, is also a crime though nothing be done in prosecution of it, the offense being complete when the confederacy is made (2 Arch. Cr. Pr., 7th ed., 1045, and cases there cited; 2 Bishop's Cr. L., title "Conspiracy;" 3 Greenl. Ev., Redfield's ed., title "Conspiracy," § 89, etc.; 3 Whart. Cr. L., 6th ed., § 2291, etc.); and it was not necessary to state in the information the *means* which were to be used.   2 Bish.

Cr. Proc., 217, 218; 1 id., 516; 2 Arch. Cr. Pr., 1040, note; 3 Whart. Cr. L., §§ 2293, 2295; 3 Chitty's Cr. L., 1143; Whart. Prec., 334–351; *State v. Ripley,* 31 Me., 386; *State v. Bartlett,* 30 id., 132; *State v. Noyes,* 25 Vt., 415; *Comm. v. Gillespie,* 7 Serg. & R., 469; *Hazen v. The Comm.,* 11 Harris, 365; 10 id., 253; *State v. Buchanan,* 5 Harris & Johns., 317; *People v. Richards,* 1 Mann. (Mich.), 217; *People v. Clark,* 10 Mich., 310; *Johnson v. People,* 22 Ill., 314. See also Laws of 1871, ch. 137, sec. 2. 2. The evidence in this case supports the charge of conspiracy. The object of the conspiracy was to obtain money of Burke; the means used were certain false pretenses and pretended arrest. The conspiracy is the gist of the offense; the means used are not the crime, but only evidence of the crime. And the doctrines applied by the court to false pretenses, that they must be calculated to deceive and must not be a mere promise to do a thing, do not apply to conspiracies, because the combination itself may make any pretense formidable and give it power to deceive. 7 Serg. & R., 469; *Queen v. Orbell,* 6 Mod., 42; *Young v. The King,* 3 Term, 98.

LYON, J. I. It is maintained by the learned counsel for the defendants, that the information is fatally defective in that it fails to show the means which the defendants conspired to employ for the purpose of defrauding Burke of his money. Their position is, that the false pretenses and devices which the defendants conspired to use to that end, should be specifically set out in the information.

Were this an information for obtaining the money of Burke by false pretenses, the position would be well taken. For we take it to be well settled, that in such an information the false pretenses resorted to by the accused to perpetrate the fraud must be set out with reasonable particularity, and that an averment thereof in the general language of the statute on that

subject (R. S., ch. 165, sec. 38), is insufficient before verdict. *State v. Green*, 7 Wis., 676.

But there is, undoubtedly, a broad distinction in this respect between an information for obtaining money or property by false pretenses, and one for a conspiracy to do so. In the latter case the averment may be less specific than is required in the former. The distinction is well stated by DEWEY, J., in *Comm. v. Eastman*, 1 Cush., 223, as follows: " If an indictment for murder should allege merely that the accused had committed the crime of murder upon the person of one A. B., or if an indictment for larceny should simply set forth that the defendant had stolen from C. D., in neither case would the offense be set forth with the particularity and precision required by law. It must be conceded, however, that in indictments for conspiracy a different rule prevails to some extent; and the precise inquiry which we have now to make is, to what extent? The offense of conspiracy, in one respect, is doubtless peculiar. It may, unlike most offenses, be committed without any overt act. A criminal purpose to do an unlawful act, or to do a lawful act by criminal means, mutually assented to or agreed upon by two or more persons, may, by such assent and agreement, ripen into crime, although no act be done in pursuance of it.

" The peculiar character of this offense has fully justified, in certain cases of conspiracy, a departure from the ordinary rules of criminal pleading. The means proposed to be used to effect a criminal purpose are not, in all cases, to be set out, and are not, in all cases, required to be proved; nor are they, in all cases, a necessary element of the crime of conspiracy. To a certain extent, the rules upon the subject are uncontroverted. If the alleged conspiracy be an unlawful agreement of two or more persons to do a criminal act, which is a well known and recognized offense at common law, so that by reference to it as such, and describing it by the term by which it is familiarly known, the nature of the offense is clearly indi-

cated, in such a case a charge of conspiracy to commit the offense, describing it in general terms, will be proper. On the other hand, if the agreement or combination be to do an act, which is not unlawful in itself, by the use of unlawful means, those means must be particularly set forth, or the indictment will be bad." This is' doubtless a correct statement of the law; and were the obtaining of property by false pretenses a common-law offense in every case, there would be no doubt of the sufficiency of the information in the present case. But in many cases the obtaining of money or property by such means is not a criminal offense at the common law, but is only so by virtue of the statute. R. S., ch. 165, sec. 38. The question is, therefore, whether one rule of pleading should be applied to an information charging a conspiracy to do an act criminal at the common law, and another rule to an information charging a conspiracy to do an act made criminal by statute. We are aware that there are decisions which seem to hlod that the two cases are governed by different rules, but we are quite unable to find any solid ground upon which to rest the distinction. In either case the information must contain sufficient averments to show that the conspiracy was to do a criminal act; and, that appearing, what can it signify that such act is made criminal by statute instead of being so by the common law? In both cases it would seem that the same rules of pleading should be applied.

An indictable conspiracy is defined to be a combination of two or more persons, by some concerted action, to accomplish some criminal or unlawful purpose, or to accomplish some purpose, not in itself criminal or unlawful, by criminal or unlawful means. Per SHAW, C. J., in *Comm. v. Hunt*, 4 Met., 123. There are some qualifications to this definition, but we need not consider them here. It will be found, on examination, that in many of. the cases which hold that the means by which the purposes of the conspirators are to be accomplished must be particularly stated in the indictment or information,

the conspiracy alleged in each is to accomplish some purpose not in itself criminal or unlawful, by the use of criminal or unlawful means. In the last case cited (*Comm. v. Hunt*), Chief Justice SHAW said: "When the criminality of a conspiracy consists in an unlawful agreement of two or more persons to compass or promote some criminal or illegal purpose, that purpose must be fully and clearly stated in the indictment; and if the criminality of the offense which is intended to be charged, consists in the agreement to compass or promote some purpose, not of itself criminal or unlawful, by the use of fraud, force, falsehood, or other criminal or unlawful means, such intended use of fraud, force, falsehood or other criminal or unlawful means must be set out in the indictment. Such, we think, is, on the whole, the result of the English authorities, although they are not quite uniform. 1 East P. C., 461; 1 Stark. Crim. Pl. (2d ed.), 156; opinion of SPENCER, Senator, 9 Cow., 586 et seq."

The fair inference from this language is, that where the confederacy consists in an agreement to accomplish a criminal purpose, while the *purpose* must be clearly expressed in the indictment, the specific *means* by which it is proposed to accomplish it need not be averred. And we think this view is sustained by the weight of authority.

This information charges a combination of the defendants to accomplish a criminal purpose, to wit, to defraud Burke of his money by false pretenses, tokens and devices, and such *purpose* is fully and clearly stated in the information. We think the information fulfills the requirement of the Declaration of Rights (Const., art. I, § 7), in that it states sufficiently "the nature and cause of the accusation" against the defendants; and that it is not essential to set out the specific means by the use of which the alleged conspirators proposed to accomplish their criminal purpose.

This view is supported by the consideration that the conspiracy itself constitutes the offense, although the purpose of

it be not effected.    Had the defendants met and agreed to obtain one hundred and ten dollars of Burke by means of false pretenses and devices, or by the use of privy and false tokens, and left it to one of their number to execute the conspiracy by employing such pretenses, tokens or devices to that end as he might choose, there is no doubt the offense would have been complete, and that an indictment for a conspiracy to compass a criminal purpose would lie against the defendants, although nothing had been done in execution thereof.   Yet in such an indictment it would be impossible to set out the specific means by which the criminal purpose was to be accomplished, for they were never agreed upon.   True, no such difficulty would arise where the objects of the conspiracy have been executed; but we are not aware that the law makes any distinction between executed and unexecuted conspiracies in respect to the averments required in indictments therefor.

The first question submitted by the learned circuit judge must, therefore, be answered in the affirmative.

II.  We are now to determine the second question submitted to us, which is as follows:  Does the evidence in the case support the charge of conspiracy as contained in the said first count?

It has already been said that the information charges a conspiracy by the defendants to commit an act made criminal by sec. 38 of the statute, that is, to obtain the money of Burke, knowingly and designedly, by false pretenses and by false and privy tokens.   It seems clear that the defendants cannot lawfully be convicted of the conspiracy charged in the information, unless the evidence establishes the fact that the purpose thereof was a criminal purpose within the statute.   The only evidence before us of the alleged conspiracy or its purpose is the acts of defendants in obtaining money from Burke. Hence, if those acts constitute an offense within the provisions of sec. 38 of the statute, the evidence is sufficient to support the charge of conspiracy as contained in the information; otherwise not.   We are to inquire, therefore, whether the acts

of the defendants, as proved on the trial, would support a conviction on an information against them under the statute for obtaining the money of Burke by false pretenses.

The fifteen dollars first paid by Burke to the defendant *C. Crowley*, was paid on an executory contract between them that the latter should procure for Burke a quantity of counterfeit money for circulation. There does not seem to be any element of an offense under sec. 38 in this transaction. It was a mere executory contract of sale, the breach of which is no crime. On the contrary, had the contract been performed, Burke would have been guilty of a criminal offense, to wit, of having in his possession counterfeit money or evidences of debt, knowing the same to be counterfeit, with intent to utter the same as true. And *Crowley* would probably have been guilty of a criminal offense also in having the same commodity in his possession, knowing it to be counterfeit, with intent to utter it as false. R. S., ch. 166, sec. 5. It were better, therefore, that the executory contract be broken than kept.

The two sums of twenty dollars and twenty-five dollars, paid through the express company, were obtained from Burke on the false pretense that the boxes received by him contained counterfeit money. Had he obtained what he expected, he intended to use it in a criminal manner. The false pretenses, therefore, prevented him from committing such crime.

In the case of the fifty dollars paid to the defendant *Carnahan*, Burke supposed he was bribing *Carnahan* with that money to commit a crime; and had this supposition been true, Burke would have been *particeps criminis* therein. R. S., ch. 167, sec. 22.

Hence all the money obtained from Burke was paid by him in the furtherance of criminal motives and intentions on his part. The money having been obtained under such circumstances by false pretenses and tokens, is the case within sec. 38 before cited?

It has been held in New York, where the same statute is in force, that false pretenses of that character are not within the statute, and not punishable criminally. In *McCord v. The People*, 46 N. Y., 470, it is said *per curiam*, that " the prosecutor parted with his property as an inducement to a supposed officer to violate the law and his duties; and if, in attempting to do this, he has been defrauded, the law will not punish his confederate, although such confederate may have been instrumental in inducing the commission of the offense. Neither the law nor public policy designs the protection of rogues in their dealings with each other, or to insure fair dealing and truthfulness, as between each other, in their dishonest practices. The design of the law is to protect those who for some honest purpose are induced, upon false and fraudulent representations, to give credit or part with their property to another, and not to protect those who for unworthy or illegal purposes part with their goods."

So also in *The People v. Stetson*, 4 Barb., 151, Mr. Justice WELLES, delivering the opinion of the court, says: " In all the numerous reported cases under the English and American statutes to prevent the obtaining money, etc., by false tokens or pretenses, I have not found one which was held to be within the statute, in which the transaction on the part of the person injured would not have been lawful, provided the representations or pretenses were true, nor where such representations or tokens, if true, were not in violation of law. I cannot believe the statute was designed to protect any but innocent persons, nor those who appear to have been in any degree *particeps criminis* with the defendant. To determine what attitude he occupies in that respect, it should be assumed that all the representations made to him, whether in words or tokens, were true; because it is an essential ingredient of the case that he believed them to be true; otherwise he could not claim that he was influenced by them. Looking at his conduct in that light, and with that assumption, if, in parting

with his money or property or yielding his signature, he was himself guilty of a crime, it cannot be that he is within the protection of the statute. Testing the case under consideration by these rules, it is impossible, in my opinion, to sustain the indictment. Barlow believed that the defendant was a constable, and had a warrant against him for a rape. He is chargeable with knowledge that the law forbade any settlement or compromise of the matter, and that it would be a misdemeanor in the defendant to neglect to execute the process. In attempting to cheat the law, he has himself been defrauded of his watch."

In *The People v. Clough*, 17 Wend., 351, Mr. Justice Cowen refers to the preamble of the act of 30 Geo. II, ch. 24, of which the statute of New York and our own are substantially copies, as showing the reason and scope of those statutes. It is as follows: "Whereas divers evil disposed persons, to support their profligate way of life, have, by various subtle stratagems, threats and devices, fraudulently obtained divers sums of money, goods, wares and merchandise, to the great injury of industrious families, and to the manifest prejudice of trade and credit." This preamble goes to show that the law was originally enacted for the protection of trade and credit, and of honest and industrious people, and not (in the language of *McCord v. The People*) "for the protection of rogues in their dealings with each other."

The doctrine of the above cases was vigorously assailed upon principle by Mr. Justice PECKHAM, dissenting from the decision of the court in *McCord v. The People*, and he cited *Comm. v. Harris*, 22 Pa. St. (10 Harris), 253, and *Comm. v. Morrill*, 8 Cush., 571. It must be conceded that these cases, particularly the former, sustain his views.

*Rex v. Stratton*, cited in a note to *Buck v. Buck*, 1 Campb., 549, illustrates the same principle, and is directly in point in this case. The indictment was for a conspiracy to deprive the prosecutor of the office of secretary of an illegal company.

Lord ELLENBOROUGH said: "This society was certainly illegal. Therefore, to deprive an individual of an office in it, cannot be treated as an injury. When the prosecutor was secretary of the society, instead of having an interest which the law would protect, he was guilty of a crime."

In Jacob's Law Dictionary the essential elements of a criminal conspiracy are thus stated: "CONFEDERACY (*confederatio*) is when two or more combine together to do any Damage or Injury to another, or to do any unlawful Act. And false *Confederacy* between divers Persons shall be punished, though nothing be put in Execution. But this *Confederacy*, punishable by Law before it is executed, ought to have these Incidents: First, it must be declared by some Matter of Prosecution, as by making of Bonds, or Promises, the one to the other; secondly, it should be malicious, as for unjust Revenge; thirdly, *it ought to be false, against an Innocent;* and lastly, it is to be out of Court, voluntarily. *Terms de Ley*, 158." In the present case, the confederacy or conspiracy charged in the information is punishable by law before it is executed, and hence is within the above rule. As already observed, the proofs show that it is not "*false, against an innocent.*"

After much investigation and deliberation, we have reached the conclusion that the rule of the New York cases is supported by the better reasons, as well as by the weight of authority, and that it is our duty to adopt it. We do so with hesitation, because able judges and courts have held a different rule; and with reluctance, because the acts of the defendants (or some of them), as disclosed by the evidence, were outrageous and indefensible, and the perpetrators richly merit punishment. But it is far better that they should escape punishment under this information, than that sound legal rules should be disregarded to meet the supposed exigencies of a particular case.

It may further be observed (although not essential to the determination of the question under consideration), that had

Burke exercised common prudence and caution, he could not have been misled by the false pretenses by which he was induced to pay the money to *Carnahan*. He had in his possession the box which the latter charged contained counterfeit money, and, by an examination of its contents, could readily have ascertained whether the charge was true. The cases cited by counsel for the defendants abundantly show that such a case is not within the statute.

It follows from the foregoing views, that the second question submitted by the learned circuit judge for our determination must be answered in the negative.

The case must be certified to the circuit court with these answers to the questions reported, and with the direction that that court proceed in accordance with our decision.

