THE PEOPLE v. ADAM C. ARNOLD.

*Conspiracy to cheat by false pretences—Ambiguous charges not cured by intendments—Formal conclusion to information—Merger of misdemeanor in felony—Personation of others—Admissions of confederates—Confessions.*

An information for conspiracy need not allege the means to be employed unless they constitute the only element of criminality.

An information for cheating and defrauding by false pretences must spe_ cify the pretences used; but an information for conspiracy thereto need not allege the means, and the offence may be complete even though the pretences or the victims are not agreed on.

An uncertain or ambiguous criminal charge cannot be supported by intendments.

An information for conspiracy need not allege an overt act in pursuance of it; and such an allegation, if made, does not aid a defective allegation of the conspiracy itself.

Where a conspiracy to obtain property by false pretences, has been carried into effect, an information therefor should state against whom the conspiracy was directed.

An information for conspiracy to obtain property by false pretences, should aver that the property belonged to some other person or persons than the conspirators.

The conclusion "against the form of the statute in such case made and provided" is mere surplusage, and does not determine that the information is for felony rather than a misdemeanor.

A misdemeanor is not merged in a felony in Michigan. Comp. L. § 7919 And where an information is filed for a misdemeanor, and a felony is shown, and the case is left with the jury, no farther prosecution for the misdemeanor can be had.

The misdemeanor of conspiring to obtain property by false pretences, may be tried wherever an overt act in pursuance of the conspiracy has been committed.

Where a conspiracy to defraud involves the personation of defendant by wearing his clothes, it is admissible to show that the defendant had proposed the scheme to a person not named in the information, but that it had actually been carried out by the confederate named.

A conspiracy may be shown by the detached acts and statements of the individual conspirators, and in a prosecution therefor the admissions of a confederate after the offence was committed are admissible to prove his own participation, the jury being cautioned not to permit his confessions to prejudice others.

There can be no conviction for conspiracy aside from the confessions of individuals, unless there is independent evidence of the participation of the different persons charged.

Exceptions before judgment from St. Joseph. Submitted April 27. Decided June 22.

INFORMATION for conspiracy to obtain money by false pretences. Respondent was found guilty. Verdict set aside and information ordered to be quashed.

*G. V. N. Lothrop* for respondent. An information for conspiracy to obtain money by false pretences should allege that it is the money of some other person: *Reg v. Parker* 3 Q. B. 292.

Attorney General *Jacob J. Van Riper* for the people. The venue of conspiracy may be laid in any county in which any overt act in pursuance of it is done : *People v. Mather* 4 Wend. 259; Tiff. Crim. Law, 354; Whart. Crimes, § 2350; where a criminal act is done partly by one and completed by another, it is inferable that both are engaged in a conspiracy : Whart. Crimes, § 2355 ; *People v. Saunders* 25 Mich. 120.

COOLEY, J. The information on which the defendant has been convicted alleged that he and other persons, at a time and place named, " unlawfully, deceitfully and fraudulently did combine, conspire, confederate and agree together, by divers false pretences, subtle means and devices to obtain and acquire to themselves the sum of, to wit nineteen hundred dollars of the value of nineteen hundred dollars, with intent to cheat and defraud." This is all the description we have of the conspiracy ; but it is further averred that the conspirators " in pursuance of and according to said combination, conspiracy and agreement, between them as aforesaid, did, to wit, on the 16th day of March, 1880, at Sturgis in said county of St. Joseph, by diverse false pretences, subtle means and devices, unlawfully, falsely, deceitfully and fraudulently obtain and acquire to themselves of and from the First National Bank, a corporation created and existing under the laws of the United States, having its principal place of business at Sturgis in said county, and of the moneys, goods and chattels of said bank, fifty dollars in greenbacks and National Bank notes of the value of fifty dollars with intent to cheat and defraud."

It was objected on motion to quash that the information set forth no offence ; but the court overruled the motion, and the case went to the jury on the facts. On exceptions the sufficiency of the information is now before us.

It will be observed that the information only avers in general terms a conspiracy by divers false pretences, subtle means and devices to cheat and defraud, and that it does not set out and describe the pretences and devices, or more particularly indicate the means whereby the cheat was to be accomplished. Neither does it specify the person or persons who were the objects of the conspiracy, and who were to be cheated and defrauded in the prosecution thereof. It is conceded that if the act which the conspirators combine to perform is unlawful, it is not necessary to set out in the information the means intended to be employed in accomplishing it : *Rex v. Gill* 2 B. & Ald. 204; *Regina v. King* 7 Q. B. 782: *Sydserff v. Regina* 11 Q. B. 245; *Commonwealth v. Ward* 1 Mass. 473 ; *Commonwealth v. Warren* 6 Mass. 72; *State v. Buchanan* 5 Har. & J. 317; *Commonwealth v. McKisson* 8 S. & R. 420; *Twitchell v. Commonwealth* 9 Penn. St. 211; *Hazen v. Commonwealth* 23 Penn. St. 355; *State v. Bartlett* 30 Me, 132; *State v. Parker* 43 N. H. 83; *State v. Jones* 13 Iowa 269 ; *State v. De Witt* 2 Hill (S. C.) 282; *People v. Richards* 1 Mich. 216; *People v. Clark* 10 Mich. 310. But if the end in view is lawful or indifferent, and the conspiracy only becomes criminal by reason of the unlawful means whereby it is to be accomplished, it becomes necessary to show the criminality by setting out the unlawful means. *Commonwealth v. Eastman* 1 Cush. 189; *State v. Noyes* 25 Vt. 415; *Alderman v. People* 4 Mich. 414; *People v. Clark* 10 Mich. 310.

To cheat and defraud by false pretences a person named is an indictable offence by statute. In an information for this offence it would be necessary to specify the pretences used; but in an information for conspiracy to cheat and defraud by false pretences the like particularity is not essential. It is enough to allege in general terms the combination and agreement to commit the crime; *State v. Crowley* 41 Wis. 271; and the offense of conspiracy may be complete even though the pretences for accomplishing it may not be agreed upon. *People v. Clark* 10 Mich. 310. It may also be complete although no particular persons were in view as

subjects of the fraud, if a definite purpose to defraud appears. The conspiracy for which conviction was had in *Rex v. De Berenger* 3 M. & S. 67, was alleged to be a conspiracy to defraud such subjects of the king as should make purchases in the public funds when the price should be artificially advanced by false statements and unfounded rumors. See also *Regina v. Peck* 9 A. & E. 686. In *Clary v. Commonwealth* 4 Penn. St. 210, the indictment, which was held good, charged a conspiracy by the circulation of false and forged bills to cheat and defraud "the citizens of this commonwealth and others." In *Commonwealth v. Judd* 2 Mass. 329, the conspiracy was to manufacture base and spurious indigo and sell the same at public auction, with intent to cheat and defraud such persons as should become purchasers. It is necessary to permit this general form of pleading, or some of the worst and most mischievous conspiracies would escape punishment altogether, from the obvious impossibility of making the indictment specific when the purpose to defraud was general.

Now it is highly probable that in this case Arnold and his associates did not in their combination fix definitely upon any persons who should be the victims of their criminal artifices. They planned frauds and agreed in a general way upon the means whereby they were to be accomplished, but circumstances must determine who should be defrauded. It would have been allowable, therefore, to charge that they conspired, by divers false pretences and tokens to cheat and defraud; making use, for that purpose, of terms as general as those employed in the cases above referred to. A better method no doubt would have been, when the fraud had been actually accomplished, to allege a conspiracy to cheat and defraud the bank which was actually defrauded, for the overt act had then made specific and certain what before was general and uncertain.

But in this case the allegation is that the associates conspired to obtain and acquire to themselves a certain sum of money with intent to cheat and defraud. It is not alleged that the purpose was to cheat and defraud any one person or

class of persons, or the public generally. As stated, the conspirators had in mind a purpose to cheat; but this was an incomplete purpose unless it contemplated being carried out by the selection of persons as victims. They also had in mind to acquire to themselves a certain sum of money; but it is not alleged that this money belonged to any other person or persons, or that they conspired by their false pretences and devices to deprive any other person or persons of his or their money or other property. It would be perfectly conceivable—if the information contained no further allegation respecting it—that the money they proposed to acquire to themselves was their own money which some one else was wrongfully witholding from them, and which by deception they proposed to reclaim. Nothing can be intended in favor of an uncertain or ambiguous criminal charge.

But in this case an overt act is alleged to have been done in pursuance of the conspiracy; and this overt act was the obtaining by false pretences of the sum of fifty dollars of the First National Bank of Sturgis, of the goods and chattels of that bank. Had the information alleged that the conspiracy contemplated this particular fraud it would have been sufficient; but the question now is whether the allegation that this criminal act was done in pursuance of the conspiracy is sufficient to supply the defect in setting out the conspiracy itself.

If it were essential in these cases to allege and prove an overt act, the question would be of easy solution; but, as already stated, this is not needful, for the crime charged is the conspiracy, and that requires no overt act whatever to render it complete. *Regina v. Best* 2 Ld. Raym. 1167; *State v. Burnham* 15 N. H. 396; *Commonwealth v. Gillespie* 7 S. & R. 469; *People v. Clark* 10 Mich. 310. The proof of an overt act may be important for the bearing it may have upon the evidences of conspiracy, and also as it may aid the court in justly graduating the punishment in case of conviction. Alleging and proving it, therefore, is much like alleging and proving matter of aggravation in other cases.

But whether the allegation of an overt act may aid a

defective charge of conspiracy when the allegation itself is unnecessary, and if defective might be treated as surplusage, is a point not readily settled upon the authorities. Personally I should be inclined to follow *Rex v. Spragg* Burr. 993, in which the point was decided in the affirmative; but the authority of that case is unquestionably somewhat shaken by what is said in *King v. Regina* 7 Q. B. 795, 809, and by later cases, and my brethren are not disposed to follow it. In their opinion the information in this case is fatally defective, and should have been quashed.

It is not very essential, perhaps, that anything should be said at this time upon the other questions made by the record, but as it is not likely the case will be allowed to rest upon a failure because of defective papers, and the questions now made may be raised upon a new trial upon a better information, it may be well to express an opinion upon them.

It was contended that as the information showed a felony committed, the common-law misdemeanor was merged therein and could not now be punished. This raises a question over which there has been much controversy; but it is no longer of importance in this State because the statute has rendered it immaterial. The statute provides that "If, upon the trial of any person for a misdemeanor, the facts given in evidence amount in law to a felony, he shall not, by reason thereof, be entitled to an acquittal of such misdemeanor, and no person tried for such misdemeanor shall be liable to be afterwards prosecuted for felony on the same facts, unless the court, before which the trial shall be had, shall discharge the jury from giving any verdict upon such trial, and shall direct such person to be indicted for felony." Comp. L. § 7919.

The information in this case was for the misdemeanor only. It alleged in general terms that the crime of false pretences had been committed, but it did not set out the pretences, and therefore would have been insufficient as a charge for the felony. *State v. Crowley* 41 Wis. 271. It was good as a charge of misdemeanor, because by a long course of decision more generality of allegation has been permitted in making that charge. The information con-

cluded *contra formam statuti*, but that was mere surplusage. *Commonwealth v. Hoxey* 16 Mass. 385; *State v. Buckman* 8 N. H. 203. No one pretends that there has been any attempt here to put this defendant on trial for anything else than the conspiracy. When therefore the prosecution showed the commission of a felony, the case was presented which the statute contemplates, and when the judge permitted the case to go to the jury, he determined finally the question now made. It was the purpose of the statute to preclude the merger in such a case, and to settle forever the troublesome questions which had before existed on that subject.

It is also objected that the defendant was informed against and tried in the county of St. Joseph while the conspiracy is alleged to have been formed in Calhoun; so that the defendant has been deprived of his right to a trial by a jury of the vicinage. But the overt act was committed in St. Joseph; and according to the common-law precedents the misdemeanor may be tried wherever an overt act in pursuance of the conspiracy takes place. If a man at one end of the State conspires with others to defraud a person at the other extreme, and the fraud is actually committed, the question of hardship as between him and the prosecutor in requiring the trial for the conspiracy to be had at the place of residence of the one rather than at that of the other, presents considerations which obviously are not at all in favor of the accused. But the rule is clear and no doubt has been wisely settled. *The King v. Brisac* 4 East 164.

It was further contended that the conspiracy set out in the information was not proved, but the evidence tended to show one that was different.

The conspiracy alleged was one between Adam C. Arnold, John Snediker and other persons unknown. As developed in the evidence, the conspiracy contemplated that John Snediker should dress himself to represent Arnold, take certain bank drafts owned by Arnold and payable to his order, negotiate and indorse them in Arnold's name, divide

the avails with Arnold, and that then Arnold should stop payment and demand and obtain new drafts instead.

The drafts were dated in December, 1879. One of them was negotiated at the First National Bank of Sturgis by John Snediker, March 16, 1880. There was abundant evidence in admissions made by him that he took and negotiated this draft in pursuance of the conspiracy, and that he had other drafts to the amount of $1850 for the same purpose. The case against Arnold was, for the most part, circumstantial, but the prosecution was allowed to prove a conversation between him and one Samuel Snediker, which took place in the latter part of February, 1880, in which, as the witnesses testified, Arnold made the distinct proposition that Samuel Snediker should take the drafts and go off and negotiate them precisely as John Snediker afterwards did, and that Arnold should subsequently collect the amount. This evidence was objected to as tending to show a conspiracy between Arnold and Samuel Snediker, with which John Snediker was not connected. I do not understand however, that the prosecution made any claim that this evidence showed a conspiracy. It showed criminal advances by Arnold to Samuel Snediker, but no acceptance, and there was no other evidence which in any way connected Samuel Snediker with the alleged offence. The evidence was therefore inadmissible unless it was relevant to the charge of conspiracy with John Snediker. But I think it was relevant. It tended to show that Arnold, but a few days before John Snediker had personated him in the sale of one of his drafts, wearing for the purpose his clothes, watch and spectacles, had proposed the same thing to another person, and endeavored to entice him into a conspiracy to do precisely what was afterwards done by John Snediker. Now if one man proposes to a second the commission of a crime, and it is found afterwards to have been committed by a third, its commission raises but a feeble presumption, if any, that the first proposee was in any manner connected with it. But this case is peculiar. The crime proposed involved the personation of the defendant, and the possession of some of his

property. The preparation for it necessarily required either the connivance of the defendant, or the commission of a crime upon him to obtain possession of the means of committing the offence alleged. It is not therefore the naked case of the commission of a crime by one person which had been previously suggested to another, but it was the case of a crime committed with the means which must have come from the person by whom the crime was suggested. It is true that he may have been robbed of these, instead of furnishing them voluntarily, but it is so improbable it should occur to John Snediker, independently of any previous suggestion, to commit the offence in precisely the way Arnold had before proposed to another person, and that he should commit another and higher offence in order to obtain the proposed means, that a jury would be quite warranted in believing there was something more in the case than a mere coincidence.

It is further urged that the court erred in receiving in evidence the admissions of John Snediker. These were admissions of a joint offence, made after its commission, and from their nature, it is said, could not be received against Snediker alone. But the fact that the offence is joint cannot exclude admissions. They are admissible against the party making them, and the court must protect the other by cautioning the jury not to permit the confession of his alleged associate to prejudice him. If the participation of the other is not made out by independent evidence, there can be no conviction; but the existence of a conspiracy must commonly be made out by the detached acts and statements of the individual conspirators.

For the defect in the information which has been pointed out, it must be certified to the circuit court that the verdict should be set aside, and the information quashed.

Marston, C. J. and Campbell, J. concurred.

Graves, J. took no part in the decision.