OF THE

## STATE OF IOWA.

AT

## DES MOINES, OCTOBER TERM, A. D. 1902.

AND IN THE FIFTY-SIXTH YEAR OF THE STATE.

---

THE STATE OF IOWA v. HUBBELL O. SOPER, Appellant.

Conspiracy: INDICTMENT: ALLEGATIONS OF. In an indictment
1  charging a conspiracy to commit a crime by falsely obtaining
   a signature to a written instrument, it is not necessary to al-
   lege the obtainng of the instrument itself by false pretenses.

Indictment: STATUTE OF LIMITATIONS. Allegations of the indict-
2  ment held sufficient to take the case out of the statute of
   limitations.

Witnesses: WHO COMPETENT IN CONSPIRACY. In a prosecution for
3  conspiracy, witnesses other than those named in the indictment
   as persons intended to be defrauded by false representations,
   may testify that defendants made similar representations to
   them about the time such representations are shown to have
   been made to the persons named in the indictment.

| 118 | 1 |
| 123 | 526 |
| 118 | 1 |
| 131 | 620 |
| 118 | 1 |
| f132 | 422 |

---

NOTE—The figures on the left of the syllabi refer to the corresponding figures
placed on the margin of the case at the place where the point of the syllabus is decided.

Same: ACTS DONE IN ANOTHER COUNTY. Acts done in another county may be shown for the purpose of establishing the conspiracy.

Acts of Conspirators: WHEN MAY BE SHOWN. As long as conspirators are acting in pursuance of an unlawful combination, the acts and representations of each may be shown as against the others.

Instructions. It is not error to refuse instructions which are covered by those given.

Motion for New Trial: DISCRETION OF TRIAL COURT. The discretion of the trial court in overruling a motion for a new trial based upon affidavits and counter affidavits will not be interferred with.

*Appeal from Washington District Court.*—HON. W. S. WITHROW, Judge.

TUESDAY, OCTOBER 7, 1902.

THE appellant with three others, was indicted for conspiracy, with intent by false pretenses to obtain the signatures of certain persons to certain deeds, mortgages, promissory notes, and other instruments in writing, the false making of which would be punished as forgery, and, being separately tried, he was found guilty, and sentenced to imprisonment in the penitentiary, from which judgment he appeals.—*Affirmed.*

*L. W. Colby* and *H. Scofield* for appellant.

*Charles W. Mullan*, Attorney General, and *Chas. A. Van Vleck*, Assistant Attorney General, for the State.

MCCLAIN, J.—The facts on which the indictment was found, and which the evidence on the trial tended to prove, may be briefly stated as follows: Appellant was the patentee of a conical tin clothes washer or clothes pounder, and was engaged with the other defendants in Washington county in selling agency rights therefor. The method of

procedure was to sell an agency right for $1,000, giving the agent a contract entitling him to sell other agency rights at the same price, retaining $500 commission on each right thus sold, and also to sell the clothes washers at $5 each, procuring the machines from appellant at a cost of $1 each. The agent was also authorized by his contract to employ subagents, not exceeding three, to sell the machines on the same terms. Appellant and his codefendants represented to those negotiating for agency rights that large profits had been made by others under similar contracts; that large numbers of the machines had been sold in different localities, and had given satisfaction; that the machine was the only successful conical tin clothes washer; that it was made of tin of a certain excellent quality, and the like; that the agencies were sold to no one for less than $1,000 each in cash or guaranteed securities, and that the machines were sold for not less than $5 each in cash. For the state evidence was introduced tending to show that some of these representations were false, and that they were fraudulently made, with knowledge of their falsity. Many errors are assigned and argued with reference to the sufficiency of the indictment, the rulings of the court as to the introduction of evidence, the instructions of the court, and the sufficiency of the evidence to sustain the verdict. It will not be profitable to discuss all of the assignments noticed in the printed argument, but we will consider the fundamental questions, disposition of which will practically dispose of the principal contentions of appellant, and will cover the points specially urged upon our attention in the oral argument.

I. Many objections were made to the indictment by demurrer, which was overruled. The one most elaborately presented in different forms is that the offense which the

I. INDICTMENT: defendants are charged to have conspired to allegations of. commit, is not sufficiently described. The indictment was undoubtedly drawn with the purpose of

charging a conspiracy to commit a felony, within the terms of Code, section 5059, the felony being the act of designedly and by false pretenses, or by privy or false token, and with intent to defraud, obtaining the signatures of any person to any written instrument the false making of which would be punished as forgery. Code, section 5041. The offense which defendants were thus charged as having conspired to commit was fully described in the indictment in accordance with the language of the Code defining it. Counsel for appellant contend that an indictment for falsely obtaining a signature, etc., must allege the obtaining not only of the signature, but the instrument itself, by false pretenses (*State v. McGinnis*, 71 Iowa, 685), and that the indictment in this case is fatally defective for not containing such an averment. This contention, however, is fully answered by the suggestion that the indictment before us is not for falsely obtaining the signature, etc., but for conspiracy to commit a felony, and that the allegations as to the crime of falsely obtaining the signature by false pretenses, etc., are important only for the purpose of describing the conspiracy charged. It is well settled that it is not necessary in an indictment for conspiracy to commit a crime to describe the crime intended to be committed with the accuracy or detail essential in charging the commission of the crime itself, and that if, in the indictment for conspiracy the crime charged to have been intended is stated in accordance with the statutory description thereof, it is sufficient. *State v. Grant*, 86 Iowa, 216, 221; *State v. Ormiston*, 66 Iowa, 143, 148; *State v. Ripley*, 31 Me. 386; *People v. Arnold*, 46 Mich. 268 (9 N. W. Rep. 406); *State v. Crowley*, 41 Wis. 271 (22 Am. Rep. 719); *Com. v. Eastman*, 1 Cush. 189 (48 Am. Dec. 596). In other words, what is required in the indictment for conspiracy to commit a crime is a correct designation of the crime as known to the common law or specified by statute, as the case may be, which the defendants are charged to have intended to

commit, and not the allegation of acts which, if committed, would have constituted such crime. Where the conspiracy is charged to have consisted in the agreement to do an act not in itself criminal by illegal means, then the illegal means contemplated must be described; but, where the offense consists in the conspiracy to commit a crime, the means by which such crime is to be committed need not be alleged. *State v. Grant, supra*; *State v. Bartlett*, 30 Me. 132; *People v. Clark*, 10 Mich. 310; *Thomas v. People*, 113 Ill. 531. This is entirely reasonable, for the conspiracy might be completed without the means employed having been agreed upon, as the crime of conspiracy consists, not in overt acts done for the purpose of carrying out the conpiracy, but in the unlawful combination itself with the purpose of doing the unlawful acts. *State v. Ripley*, 31 Me. 386; *State v. Crowley*, 41 Wis. 271. The obtaining of the instrument itself would be essential in charging the completed crime of obtaining a signature by false pretenses, etc., but not essential in describing the crime which the defendants in this case were charged with conspiring to commit.

II. Another ground of demurrer was that the indictment on its face showed that it was not found within the statutory period of limitation, which, as to the crime of conspiracy, is three years. Code, section 5165. But Code section 5167, provides that "no period during which the party charged was not publicly resident within the state is a part of the limitation," and it is alleged in the indictment that "since the commission of the aforesaid crime * * * the defendants have been nonresidents and lived beyond the limits of the state of Iowa more than one year." As the indictment was found less than four years after the date of the conspiracy as charged in the indictment, this allegation is sufficient to take the case out of the statute, and bring it within the exception of Code, section 5167, unless it is to

2.  SAME; statute of limitations.

be said that while one is a nonresident of the state and living beyond its limits he may nevertheless be publicly resident within the state.    We think it evident that by any reasonable interpretation the language used in the indictment must be held to plainly negative public residence within the state, and therefor that this objection was not well taken.

III.    Witnesses were introduced by the state other than the persons named in the indictment as the persons intended to be defrauded by the false representations, and

3. WITNESSES: who competent in conspiracy.

were allowed to testify that defendants made similar representations to them about the time that such representations are shown to have been made to the persons named in the indictment.    Counsel for appellant insist that the testimony of these witnesses was inadmissible, as it tended to show acts not properly charged in the indictment; and they ingeniously contend that, as these witnesses were before the grand jury, and their names were known, they could not properly be described in the indictment as "divers other persons whose names are unknown to the grand jury," arguing with some elaborateness that such a description is improper where the names of the persons intended are in fact known. But the whole contention is based on a misinterpretation of the law with reference to conspiracy.    As we have already suggested, the crime of conspiracy in itself does not involve the doing of any act whatever towards the carrying out of the purpose of the conspiracy.    It is complete when the combination is formed with a criminal object. The purpose for which evidence is allowed to be introduced of acts by the defendants in pursuance of the conspiracy is to show the existence of the conspiracy itself, it being well understood that the doing of an act tends to show the intent to do it.    Evidence that fraudulent representations were made to the persons named in the indictment would tend to support the allegation of a conspiracy to defraud

such persons.    Evidence that similar representations were made to others not named in the indictment would be admissible as tending to show that such representations were intentionally and willfully made in the carrying out of the general plan involved in the conspiracy charged.    That the making of similar representations to others than those named in the indictment may be proven under an indictment for conspiracy is too well settled to require elaborate citation of authorities.    But see *Tarbox v. State*, 38 Ohio St. 581; *Card v. State* 109 Ind. 415 (9 N. E. Rep. 591); *Luckey v. Roberts*, 25 Conn. 486; *State v. Glidden*, 55 Conn. 46 (8 Atl. Rep. 890, 3 Am. St. Rep. 23); *Com. v. Jeffries*, 7 Allen, 548, 566 (83 Am. Dec. 712).    It is immaterial, therefore, that all the witnesses who were called to testify as to the making of such false representations in pursuance of the general objects of the conspiracy were not named in the indictment as the persons intended to be defrauded.

IV.    Objection is made that some of the witnesses were allowed to testify as to acts done outside of the limits of Washington county; but it is well settled that, if the conspiracy is formed and entered into in one county, acts done in another county in carrying it out may be shown for the purpose of establishing the fact of the conspiracy.    *Card v. State*, 109 Ind. 415 (9 N. E. Rep. 591); *Rex v. Brisac*, 4 East, 164, 171; 2 Wharton, Criminal Law, section 1400.

4. SAME: acts done in another county.

V.    There is some contention that witnesses were allowed to testify to acts and representations of codefendants of the appellant after the termination of the conspiracy, but we find no foundation for any such claim.    So long as the defendants were acting in pursuance of the unlawful combination, though subsequently to the making of the combination, and therefore after the completion of the crime of conspiracy, the acts and representations of each may be shown as against

5. ACTS of coconspirators: when may be shown.

the others. The position for which counsel seem to contend would cut off proof of any acts of one of the conspirators as against the other, for the crime of conspiracy was completed when the unlawful agreement was entered into. The conviction in *State v. Grant*, 86 Iowa, 216, was set aside because evidence was allowed as to the acts and declarations of one of the defendants charged with conspiracy on the trial of the other, which antedated the formation of the conspiracy, or were subsequent to the arrest of the codefendant, and therefore evidently after he had ceased to act in carrying out the common purpose; but no such objection is found as to the testimony received in this case.

VI. Many objections are urged to the giving and refusal of instructions. Some of them are based on erroneous assumptions as to the law, which have already been considered. The others are not of sufficient importance to require separate notice. The instructions were given on correct theories as to the law involved, and fully and fairly submitted to the jury the questions to be determined by them in finding whether defendant was guilty, and the instructions refused were fully covered by those given. For instance, complaint is made as to the giving of an instruction with reference to reasonable doubt, and the refusal of instructions asked for appellant on the same subject. But the instruction was given in a form well recognized in the previous decisions of this court, and sufficiently covered the whole ground.

6. ——: Instructions.

VII. On a motion for a new trial, affidavits were introduced for the purpose of establishing misconduct of a member of the jury, and also misconduct of counsel for the prosecution, consisting in acting in the case for the state while being interested as counsel in civil cases involving the same state of facts. But the misconduct complained of in each

7. MOTION for new trial: discretion of trial court.

respect was negatived by counter affidavits, and we have no disposition to interfere with the exercise of discretion on the part of the trial judge in overruling the motion so far as it was based on these grounds.

It was a legitimate question on the trial whether defendant conspired to commit the crime charged, and whether, as tending to show such conspiracy, he or his associates afterwards made representations which he or they knew to be false, with the intent of procuring signatures to instruments by the persons named in the indictment. But these questions were for the determination of the jury, and there is not such a want of evidence as to justify us in setting aside a conviction based on their verdict of guilty.—AFFIRMED.