### PEOPLE *v.* REED.

CONSPIRACY—EVIDENCE—SUFFICIENCY.

> In a prosecution for conspiring to cheat and defraud, evidence that defendant falsely represented himself to be a "trustee" of a certain corporation whose capital stock he was selling, and that in the transaction whereby he obtained bankable notes from the victim, he and another gave worthless notes signed by them as "trustee," *held,* sufficient, in connection with other evidence, to sustain a conviction.

Exceptions before judgment from Cass; Des Voignes

, 225—Mich.—20.

(L. Burget), J.   Submitted October 11, 1923.   (Docket No. 120.)   Decided December 19, 1923.

Dana L. Reed was convicted of conspiracy.   Affirmed.

*H. Monroe Dunham,* for appellant.

*Andrew B. Dougherty,* Attorney General, and *Asa K. Hayden,* Prosecuting Attorney, for the people.

CLARK, J.   Defendant Reed was convicted of the offense of conspiring on January 1, 1922, "and on divers other days and times between that date and the 15th day of June, 1922," to cheat and defraud one J. M. East by false pretenses of a sum of money, "to wit: The sum of one thousand dollars."   On exceptions before sentence, defendant raises one question:

"Whether or not the testimony supports the charge that there has been an unlawful combination and agreement between   *   *   *   Reed, and Collins and Jennings, to defraud   *   *   *   East."   *   *   *

There was no motion for a new trial so we may not consider whether the verdict is against the great weight of the evidence.   Defendant's question, therefore, is whether any evidence supports the charge.

East was a wealthy farmer, 68 years of age, living near Marcellus.   Reed was a stock salesman, Jennings a stock broker and salesman, and Collins an agent of a broker for the sale of stock of the American Cash Register Company.   East had purchased stock through Reed.   On February 23, 1922, Reed, Collins and Jennings got a subscription agreement from East for a block of the cash register stock.   This transaction nets one item of proof, that Collins represented himself to be a member of and a "trustee" for the cash register company.   He was neither.   But we

must consider Reed's subsequent dealing with East, which is said to involve Collins, and in which Jennings had no part.    During April and May, 1922, Reed, or Reed and Collins, got East to make and deliver to Reed six negotiable promissory notes, aggregating $22,000, which notes Reed negotiated to banks which now claim to hold them for value.    Reed in turn made and delivered to East six negotiable promissory notes of like amounts, aggregating $22,000; two of the six notes were signed by Reed and by Collins as "trustee." Reed testified that Collins signed the notes for his accommodation.    Collins was not called as a witness, was not found, and it is not shown directly that he got any of the money, the avails of the East notes. It appears that East was led to believe that the notes of Reed, and of Reed and Collins, were good.    Reed testified that East contributed the notes that he might become a partner with him in business.    East, admitting that he had expected to be rewarded or compensated for giving the notes, testified that they were not to be sold but were to be deposited in a bank or in banks "as a bond" to enable Reed, or Reed and Collins, to procure advantageous contracts to sell stock. About three weeks after the making of the last of the East notes, Reed sent to East a recital, called an agreement, signed by Reed and by Collins, stating that East was to have one-third of the prospective profits on the sale of certain securities at Pittsburgh.    There were no further transactions between East and the claimed conspirators.    There is no evidence of the actual making of an agreement or combination by and between Reed and Collins to defraud East, as charged. Evidence of overt acts is, in the main, aimed at Reed. But, if the charge of conspiracy is to be sustained, Collins must be a party for Reed could not conspire with himself.    The only evidence of overt acts to involve Collins respecting the notes is that of signing two of them as "trustee" and signing the recital or

agreement above mentioned.    On this record, Collins', adding the word "trustee" after his name when signing the notes, and Reed's issuing the notes so signed, must be held to be fraudulent, a false pretense, intended to cheat and defraud East.    It is not claimed that the notes of Reed and of Reed and Collins are of any value.    The evidence is capable of an inference that such notes when made were neither bankable nor collectible.    No reason for giving them appears, except that they were given to facilitate procuring, by fraud and false pretense, bankable paper from East.    And this makes pertinent the so-called agreement of Collins and Reed to share certain prospective profits with East.    There is, therefore, some evidence to sustain the charge and conviction of conspiracy. See 12 C. J. p. 542; *People* v. *Clark,* 10 Mich. 310; *People* v. *Gilman,* 121 Mich. 187 (46 L. R. A. 218, 80 Am. St. Rep. 490).

Conviction affirmed.    Cause remanded.

WIEST, C. J., and FELLOWS, McDONALD, BIRD, SHARPE, MOORE, and STEERE, JJ., concurred.