STATE *vs.* GEORGE W. SMITH *et al.*

APRIL 18, 1936.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker, and Condon, JJ.

FLYNN, C. J. This is an indictment which charges that the defendants conspired together between certain dates to steal the property of the National & Providence Worsted Mills, a Rhode Island corporation. In the superior court, the defendants Anderton and Goldberg filed demurrers and motions to quash the indictment on the ground that the law under which said indictment was drawn is unconstitutional.

The trial justice, upon motion of the defendants and pursuant to the provision of section 1, chapter 348, of the general laws 1923, certified the question thus raised to be determined by this court. This question, as far as it may be considered as properly certified, does not require us to construe the statute in its relation to all possible evidence that may or may not be contemplated in a future trial. Upon this certification, we are concerned with only that much of the constitutional question which has been formally raised and which we have found necessary for determination according to the record before us.

The indictment is brought according to the form authorized in sec. 3, clause 5 of section 1 of chapter 1954 of the public laws of 1932, entitled: "Of Proceedings in Criminal Cases," which section reads as follows: "The following forms may be used in the cases in which they are applicable: . . . Conspiracy.—A. B. and C. D. conspired together to murder E. F. (or to steal the property of E. F., or to rob E. F.)"

The indictment before us charges: "The Grand Jurors of the State of Rhode Island and Providence Plantations and for the Counties of Providence and Bristol, duly impanelled and sworn in said County of Providence, on the seventeenth day of September in the year of our Lord one thousand nine hundred and thirty-four upon their oaths present, That George W. Smith, alias John Doe, Herman P. Goldberg, alias Richard Roe, and Arthur J. Lessard, alias John Doe, all of Providence in said County of Providence, and Raymond J. Anderton, alias Richard Roe, of Newport in the County of Newport on, to wit, the first day of July in the year of our Lord one thousand nine hundred and thirty-two with force and arms, at Providence in the aforesaid County of Providence, and on divers other dates thereafter from time to time between, to wit, the first day of July in the year of our Lord one thousand nine hundred and thirty-two and, to wit, the thirtieth day of September in the year of our Lord one thousand nine hundred and thirty-three, did fraudulently and unlawfully, conspire together to steal the property of The National and Providence Worsted Mills, a Rhode Island corporation. Against the form of the statute in such case made and provided and against the peace and dignity of the State."

The defendants contend that this is not an indictment by the grand jurors as contemplated in the constitution; that it charges no crime known to the common law or described in any statute; that if either of such crimes be charged, it fails to set out sufficiently the nature thereof and the cause of the accusation; that it fails to charge any crime with sufficient certainty to enable the defendants to plead their

acquittal or conviction thereon as a defense to any subsequent prosecution for the same offense; and because of these alleged deficiencies, the indictment is in violation of their rights under secs. 7 and 10 of article I of the constitution of Rhode Island, and also is repugnant to the provisions of section 1 of article XIV of the amendments to the constitution of the United States. The State takes a contrary position in respect to all of the contentions made by the defendants.

The constitutional question thus raised and presented for our immediate determination may be stated as follows: Is that portion of sec. 3, clause 5 of chapter 1954 of the public laws of 1932, entitled "Conspiracy" repugnant to and in violation of secs. 7 and 10 of article I of the constitution of Rhode Island or of section 1 of article XIV of the amendments of the constitution of the United States, and therefore invalid?

In view of our conclusion, expressed later in this opinion, upon the sufficiency of this indictment under our law and constitution, it is unnecessary to quote the provisions of the fourteenth amendment to the United States constitution, or to consider at length the allegations of these defendants to the effect that this indictment and statute deprives them of life, liberty or property without due process of law and without guaranteeing to them the equal protection of the law of the land. Suffice it to say, that similar contentions were made by the defendant in the case of *Caldwell* v. *Texas*, 137 U. S. 692, wherein the supreme court of the United States considered and answered adequately the same arguments in this regard as are advanced by the defendants before us. In that case the indictment, following the Texas statutory form of expression, charged the defendant substantially with killing a person. The defendant, upon pleading "not guilty," was tried accordingly and convicted thereon of murder of the first degree. The defendant filed his motion for a new trial which the trial court denied and the defendant thereupon appealed to the court of appeals,

where he contended that the indictment was so insufficient in substance that it violated the provisions of the constitutions of the state of Texas and of the United States. The Texas court of appeals, however, sustained both the sufficiency of the indictment and the consequent conviction. A writ of error was allowed to be sued out to the United States supreme court and the case was there heard upon the state's motion to dismiss, and this motion was granted and the writ of error dismissed.

The supreme court there held at page 697: "By the Fourteenth Amendment the powers of the States in dealing with crime within their borders are not limited, but no State can deprive particular persons or classes of persons of equal and impartial justice under the law. Law, in its regular course of administration through courts of justice, is due process, and when secured by the law of the State, the constitutional requisition is satisfied. 2 Kent Comm. 13. . . . No question of repugnancy to the Federal Constitution can be fairly said to arise when the inquiry of the State courts is directed to the sufficiency of an indictment in the ordinary administration of criminal law, and the statutes authorizing the form of indictment pursued are not obviously violative of the fundamental principles above adverted to. . , . The plaintiff in error was not denied the equal protection of the laws, nor deprived of the process due by the law of the land. The constitution of Texas secured to him the right to demand the nature and cause of the accusation against him, and the State court determined, as was its province, that this demand was satisfied by the indictment in question. His objections were in effect to the technical sufficiency of the indictment, but not that his rights had been determined by any other rules than those applied to the rest of the community, nor that the court had done more than commit errors in the disposition of a subject within its jurisdiction."

The requirements of the constitution of Texas in regard to the rights of one indicted for crime are

substantially similar to the requirements of the Rhode Island constitution; the contentions of the defendant in the *Caldwell* case invoked the benefit of the same basic constitutional safeguards as are here claimed; the arguments were addressed as here to the technical or legal sufficiency of the indictment; and otherwise they were substantially the same as made by the defendants in the instant case. Therefore, we are of the opinion that the specifications in the defendants' motion to quash alleging violation of their rights under article XIV of the amendments to the constitution of the United States will be answered adequately in accordance with the *Caldwell* case, *supra*, if we find that the indictment here is sufficient according to our laws and constitution.

The remaining contentions presented by the defendants are important and require a consideration of our constitution, of the statutes, and of the indictment.

The pertinent parts of article I of the Rhode Island constitution, which the defendants have invoked in their behalf, read: "Sec. 7. No person shall be held to answer for a capital or other infamous crime, unless on presentment or indictment by a grand jury . . . No person shall, after an acquittal, be tried for the same offence." Sec. 10: "In all criminal prosecutions, the accused shall enjoy the right . . . to be informed of the nature and cause of the accusation; . . . nor shall he be deprived of life, liberty, or property, unless by the judgment of his peers, or the law of the land."

In addition to the portion of clause 5, sec. 3, chap. 1954 previously set forth, the following portions of this statute will help us to understand the purpose of the general assembly, and to pass upon the sufficiency of the form of indictment authorized therein and followed in the indictment before us. These clauses are as follows: "Sec. 3. Clause 1. No indictment, complaint or criminal process shall be abated or quashed for any want of form, or because it omits to allege that the offense was committed, or the

act was done, 'feloniously,' 'burglariously,' 'wilfully,' 'maliciously,' or with 'malice aforethought,' 'unlawfully,' 'negligently,' or with 'force and arms,' or because it omits to characterize similarly the manner of the commission of the offense, or because it omits to allege the means by which the offense was committed or omits to allege the time and place of the commission of the offense, unless such description, characterization, means, time, or place, is an essential element of the offense; provided it contain such allegation of the offense that the accused is informed of the nature and cause of the accusation."

"Clause 2. Any defect or want of substance in any complaint or criminal process, other than an indictment, may be amended and supplied in the discretion of the court and the accused shall plead to such amended complaint or process, and any defect or want of substance in any indictment may be amended and supplied with the consent of the accused.

"Clause 5. The following forms may be used in the cases in which they are applicable: . . . Conspiracy.— A. B. and C. D. conspired together to murder E. F. (or to steal the property of E. F., or to rob E. F.). . . . Larceny.—A. B. stole from C. D. one horse. . . .

"Clause 6. An indictment or complaint sufficient before the enactment of this section in its present form shall continue to be sufficient notwithstanding such enactment."

The general assembly by the language of the statute in question shows clearly that it did not intend or purport to authorize the omission from the indictment of any essential element of the crime to be charged or to nullify any of the constitutional rights of an accused. This is evident especially from its clauses 1, 2, and 6. Clause 1 of this chapter first recites certain descriptive words, phrases and details, which were deemed technical and necessary according to the precise rules of criminal pleading at common law, and, to some extent, according to practice existing in this State at the time of its passage; and then it makes their use in

indictments no longer necessary, *"unless such description, characterization, means, time, or place, is an essential element of the offense; provided, it contain such allegation of the offense that the accused is informed of the nature and cause of the accusation."* (italics ours)

It is significant that this language fairly reflects the substantial requirements of our constitution in this regard; indeed, the last portion of the clause uses practically the identical language of sec. 10, article I, *supra,* which has been invoked by these defendants.

Clause 2 then cautiously limits the state's right to amend criminal process for defects or want of substance to cases *"other than indictments,"* unless the consent of the accused thereto first be obtained, showing again the legislative desire to refrain from abridging the constitutional rights of the accused.

Clause 6 declares substantially that indictments according to the precise rules and longer forms of pleading, as practiced at common law and substantially accepted here prior to the enactment of chapter 1954, *"shall continue to be sufficient, notwithstanding such enactment."* (italics ours)

In our view, the language of this clause, and the statute as a whole, shows clearly that the general assembly did not intend to invalidate, in whole or in part, the accepted forms nor to attempt to change the essentials of pleading required by the constitution. It sought, within such proper limits, to clothe specific words and forms with a technical legal meaning when used in the manner authorized to charge certain crimes therein enumerated, all of which were crimes at common law, whose names were well known as words of art.

Of course, no statute should be held constitutional merely because it was not intended thereby to exceed the express constitutional limitations upon the legislative power. We think, however, that a clear apprehension of the intent and purpose of the general assembly helps materially to measure, according to proper standards, the meaning of its terms and the legal sufficiency of its authorized forms.

It is well recognized that the general assembly has the power to prescribe, change or modify the forms or manner of stating a charge in a criminal process or proceeding. *Kenney* v. *State*, 5 R. I. 385; *State* v. *Corbett*, 12 R. I. 288.

It is equally true that the exercise of this power in criminal cases is limited and controlled by the paramount law in the constitution. This principle was well stated in *Commonwealth* v. *Freelove*, 150 Mass. 66, where HOLMES, J., said: "We admit that there are limits to its power in this direction; that, for instance, it could not authorize the omission of allegations necessary to describe a specific crime. *Commonwealth* v. *Harrington*, 130 Mass. 35, *State* v. *Learned*, 47 Maine, 426, 432." In the last-mentioned case, it is said: "We do not doubt the power and right of the Legislature to prescribe, change or modify the forms of processes and proceedings in all civil actions, and to determine what shall be deemed a sufficient allegation, in form or substance, to bring the merits of a case before the Court. But, in criminal prosecutions, the exercise of this right is limited and controlled by the paramount law in the Constitution."

Sections 7 and 10 of article I of our state constitution, *supra*, substantially require that the defendants be notified by the indictment of the nature and cause of the accusation sufficiently to identify the crime and to prevent, in case of acquittal thereon, a subsequent prosecution for the same offense. The question therefore is narrowed to whether the form of indictment before us sufficiently meets these constitutional requirements. The defendants can not contend seriously that there is in general any doubt of the nature of the crime purported to be charged in the indictment, namely, "Conspiracy." The very certification, upon their motion, of the question relating to that portion of the statute dealing with conspiracy, as well as their brief and argument addressed thereto, preclude any other viewpoint.

They do contend, however, that the cause of the accusation is not sufficiently set forth in the indictment in that it fails to state, as the object of the alleged conspiracy,

any crime known to common law or described by statute. This claim requires consideration of the meaning to be given to the words "to steal the property of the National & Providence Worsted Mills, a Rhode Island Corporation," hereafter referred to as the mill.

In the construction of the statutes, it is well settled that ordinary words, in the absence of other disclosed intention, will be given their usual meaning. *Prata Undertaking Co.* v. *State Board,* 55 R. I. 454. It is equally well established that the general assembly has power, subject only to constitutional limitations, to clothe ordinary words with a specific or technical meaning when used in a manner as authorized therein. As we view them, the words, "to steal" the property of another person imports something unlawful whether taken in their ordinary or in their technical meaning.

The word "steal," as defined in Webster's New International Dictionary, means to "take and carry away feloniously; to take without right or leave and with intent to keep wrongfully; as to steal the personal goods of another." Feloniously, in general, means "wrongfully and with the intent of committing a felony or crime." Therefore, to steal the property of another means to wrongfully, and with the intent of committing a felony or crime thereby, take and carry away the property of another. Substituting this meaning of the words "to steal" in the form in this indictment, it would read: "A. and B. conspired to feloniously take and carry away the property of the mill," that is, to wrongfully and without right and with the intent of thereby committing a crime, take and carry away the property of the mill. In this form, it is difficult to note any substantial difference between the thus expressed object of the alleged conspiracy and the elements of larceny at common law.

Larceny has been defined in various ways but the substantial elements are the wrongful taking without right and carrying away another's personal property with a felonious

intent. It has been defined as "to feloniously take and carry away the personal property of another." Bouvier, Law Dictionary; 4 Black. Com. 299. It has also been held that the natural and obvious meaning of the word "steal" is the felonious taking of property by larceny. But it may be qualified by accompanying words so as to show that such was not the meaning. See *Darling* v. *Clement*, 69 Vt. 292; cited in 55 A. L. R. at 837.

It appears therefore that the form authorized for conspiracy, namely, "A. and B. conspired to steal the property of C.," is not much, if any, different from one saying, "A. and B. conspired to commit larceny of the property of C." In this view, to steal the property of another, when stated as the object of an alleged conspiracy, is sufficient to denote an unlawful object, which, according to the ordinary meaning of "steal" is here the equivalent of larceny as it was known at common law.

Apart from the ordinary meaning of the words "to steal," the general assembly has power, as stated, within the limits of the constitution to clothe ordinary words with a specific or technical meaning. A few references to our statutes will show that the word "steal" has been used frequently and consistently by the general assembly to approximate, if not actually to describe, the doing of the act which constitutes larceny at common law.

Section 11, chap. 397, G. L. 1923, reads as follows: "Every person who shall *steal* any money, goods, or chattels, . . . *or other valuable property* . . . *shall be deemed guilty of larceny*." (italics ours) Section 12 provides that every person who shall steal or attempt to steal from the person of another, any money, goods, chattels, or other article in sec. 11, etc., shall be punished in a certain way. Section 26 makes it a criminal offense to break and enter a building *with intent to steal poultry*, and further states that: "Every person who *steals poultry* from any building or enclosure, . . . or who is discovered in the act of wilfully entering any building or enclosure . . . *with*

*intent to steal* any of said *poultry,"* shall be punished or prosecuted therefor. Section 45 which makes it a crime to wilfully and without right, take and drive, ride or use, any carriage, wagon, or other vehicle, other than a motor vehicle, has a proviso that nothing contained in that section shall be so construed as to apply to any case *"where property is taken with the intent to steal the same."* Section 71 provides a penalty for each person who shall *steal* or *attempt to steal any horse or other domestic animal.* In sec. 13 the word "stolen" is used with reference to receiving property taken by larceny. (italics ours)

From these references, it is reasonable to presume that the general assembly had a similar meaning in mind when it authorized, in clause 5 of sec. 3, a form of indictment for conspiracy. To confirm this, a further reference to chap. 1954, sec. 3, clause 5, seems to indicate clearly that such a meaning was intended to be given to the words "to steal." Having in mind the various common law crimes, which are specifically mentioned in clause 5, and the constituent elements of each, the general assembly deliberately and expressly authorized a form to be the equivalent of *"larceny,"* that is, common law larceny, which reads as follows: "Larceny.—A. B. stole from C. D. one horse."

Except for stating the particular kind of property, to wit, a horse, in this example, the language is substantially the same as "to steal the property of another." It seems reasonable to conclude from this that the clause "to steal the property of another" was intended to be at least the equivalent of the word "larceny" as used in the same clause following "conspiracy." Larceny has acquired a technical meaning and ordinarily connotes the elements of the common law crime of that name. Therefore, the form authorized for conspiracy would have the same meaning as if it read: "A. and B. conspired to commit larceny of the property of another." Instead of repeating the word "larceny" as the object of the conspiracy, the general assembly authorized the use of the words "to steal the

property of another." Hence, it seems to us that the statute itself impressed a technical meaning upon the words "to steal the property of another" as the equivalent of "larceny" as it is known at common law. Taken, therefore, in their ordinary meaning, or in the specific meaning in which they have been used in our statutes, it seems to us that the nature of the crime authorized by the indictment following the statutory form becomes clear, namely, a conspiracy to do an unlawful act and that the unlawful object of the conspiracy, or cause of the accusation, was "to commit larceny of the property of the mill."

It is difficult for us to see how a subsequent prosecution, in the event of an acquittal upon this charge, could be made upon any allegation of conspiracy to commit the crime of common law larceny, or, as described in sec. 11 of our statute, *supra*, between the dates mentioned in the indictment. Therefore, the nature and cause of the accusation, in our opinion, are set forth with legal sufficiency to notify the defendants of the substantial elements of the charge and to prevent their being put upon trial a second time for the same offense.

While the right to be informed of the nature and cause of the accusation is a constitutional as well as a common law right and, therefore, to be carefully guarded and maintained, as was said in *State* v. *Doyle*, 11 R. I. 574 at 576, nevertheless, it is also true that our constitution requires no greater certainty in criminal pleading than the common law, and perhaps less. See *State* v. *Davis* and *Quigg*, 39 R. I. 276. Moreover, this court has held in *State* v. *Murphy*, 15 R. I. 543: "The defendant contends that a complaint, to satisfy the rules of criminal pleading, should set forth specifically everything which it is necessary for the government to prove to establish the offence charged. Doubtless this is the common law rule, subject to some exceptions. The sufficiency of the complaint here is not determinable by common law rules. . . . The technical precision of the common law rule is not exacted."

It has been decided by this court in *State* v. *Bacon*, 27 R. I. 252, that a conspiracy is a confederation to do something unlawful, either as a means or an end; that in a conspiracy to do something unlawful, the execution thereof, or the means intended or benefit derived, need not be stated in the indictment.

Applying the principles of law approved in *State* v. *Bacon*, *supra*, we are of the opinion that the indictment in the instant case states as sufficiently as is required by the constitution the constituent elements of the crime of conspiracy to commit an unlawful act, to wit, common law larceny.

We concede that this form and indictment is rather general and short and may not be entirely free from possible difficulties. It certainly could not be used to charge a conspiracy to do something which was lawful in itself. We think, however, that the defendants insist upon the inclusion in this indictment of certain details which may well be the subject of a bill of particulars. We do not mean or hold that the bill of particulars can ever be used to supply any defect in substance in the indictment. There may be occasions, however, when the nature of the charge as stated may satisfy the constitutional requirements and yet require for proper preparation of a defense the granting of a bill of particulars.

In this connection we recognize and approve the force and reasoning of the authorities presented by the defendants, particularly the case of *People* v. *Bogdanoff*, 254 N. Y. 16, 171 N. E. 890. We agree with the principles enunciated therein both in the majority and in the powerful dissenting opinion. At page 31, the majority opinion says: "Doubtless if district attorneys insist upon using the form employed here, they will at times be unable to meet a challenge to the sufficiency of the description of a crime. . . . With equal ease and with greater certainty the District Attorney might have used, if he had chosen, a more precise form of indictment not subject to any possible claim that the

indictment did not describe the same crime covered by the bill of particulars."

It must be noted, however, that this case, and others relied on by the defendants, have to do with indictments charging the direct commission of some crime rather than ones alleging a conspiracy to commit that crime. By the great weight of authority in this country—with Indiana as the outstanding exception to the general rule—the indictment in the case of a conspiracy need not set out the object of the conspiracy with as much particularity as is required when the indictment charges the direct commission of the crime itself. The reason for this rule is founded in the fact that the gist of the crime of conspiracy is in the unlawful agreement or confederation. Where the object of the conspiracy, as here, is unlawful in itself, neither the statement of the means by which the conspirators intended to accomplish the object, nor its successful accomplishment are essential in the indictment. The rule seems to be the same generally elsewhere. *Garland* v. *State*, 112 Md. 83, 21 Ann. Cases 28; *Lanasa* v. *State*, 109 Md. 602; *People* v. *Arnold*, 46 Mich. 268; *Williamson* v. *United States*, 207 U. S. 425; *State* v. *Bacon, supra; State* v. *Soper*, 118 Ia. 1, and cases discussed. 5 R. C. L. §29, 1083. 2 R. C. L. Perm. Supp. §29, p. 1583.

It is well recognized that in construing the constitutionality of a statute every reasonable intendment will be resolved in favor of its constitutionality. It is also well established that the burden, in a case such as is presented to us, rests upon the defendants to convince us beyond a reasonable doubt that the general assembly by this enactment exceeded its power and abridged the rights guaranteed to the defendants under our constitution. *State* v. *Kofines*, 33 R. I. 211; *State* v. *District of Narragansett*, 16 R. I. 424; *East Shore Land Co.* v. *Peckham*, 33 R. I. 541; *Manufacturers Mutual Fire Ins. Co.* v. *Clarke*, 41 R. I. 277; *Fritz* v. *Presbrey*, 44 R. I. 207; *Prata Undertaking Co.* v. *State Board, supra.*

While the form of the indictment authorized in sec. 3, clause 5 of chapter 1954, relating to "Conspiracy" goes a long way and is open to the argument that it may invade the constitutional rights of the defendants, nevertheless, in view of the principles above expressed and restricted to the meaning above set forth, a majority of this court can not say beyond a reasonable doubt that the portion of chapter 1954, sec. 3, clause 5, in question is unconstitutional.

The papers in the case with our decision certified thereon are ordered sent back to the superior court for further proceedings.

Moss, J. I concur fully with the final conclusion of the court that the portion of chapter 1954 of public laws of 1932, sec. 3, clause 5, which is in question in this cause, is not unconstitutional; but I regret to say that I cannot agree with some of the reasoning and findings upon which that conclusion is based in the opinion of the court.

My associates find therein, in substance, that the form of indictment for conspiracy which the above mentioned section makes permissible, and which was in fact used in the indictment now before us in this cause, viz., "A. B. and C. D. conspired together to steal the property of E. F." has the same meaning as if it read "A. B. and C. D. conspired together to commit larceny of the property of E. F." So far I agree fully with them; but then they say "that the statute itself impressed a technical meaning upon the words 'to steal the property of another' as the equivalent of 'larceny' as it is at least known at common law." From this they conclude, if I follow their reasoning correctly, that the form of indictment, authorized and used, charges a conspiracy to do an unlawful act, viz., to commit larceny of the property of E. F., and that therefore the nature and cause of the accusation are set forth with legal sufficiency.

To my mind the great objection to this is that by the words "larceny as it is at least known at common law" it is admitted that "larceny," as the equivalent of the

crime charged in the indictment as the object of the conspiracy, means or may mean something more than larceny at common law. Unless we know whether the crime so charged is merely common law larceny or may be something else, and if it may be something else, what that is, I do not see how we can tell whether the accusation against the defendants is set forth in the indictment with sufficient definiteness to satisfy the requirement of the Rhode Island constitution. This provides in article I, sec. 10: "In all criminal prosecutions, the accused shall enjoy the right . . . to be informed of the nature and cause of the accusation."

The finding by the court that what is charged as the object of the conspiracy is a criminal offense, without determining just what that offense is, answers the first of the objections to the indictment which are stated by each defendant in his motion to quash the indictment, but it does not answer two others of these objections, *viz.*, that the indictment "fails to set forth sufficient facts with regard to the criminal offense, which it purports to charge said defendant with conspiracy to commit, so as to enable defendant to meet the accusation therein purported to be made against him;" and that it "fails to allege a criminal offense with sufficient certainty and precision as to enable the defendants therein to plead an acquittal or conviction thereof as a defense to a subsequent prosecution for the same offense."

The finding of the court also fails, in my judgment, to meet the following contention, stated by the attorneys for the defendants in their brief filed in this court: "The phrase 'to steal the property' in the indictment is so general that it is misleading. It comprehends larceny, embezzlement, burglary, robbery, larceny by trick or by false pretense and obtaining money or property by forgery. Likewise, 'property' includes almost every conceivable interest or thing that may be the subject of ownership. And to charge that the defendants conspired to steal property is to charge many offenses instead of one offense."

I feel that these objections should be squarely met by the court, not only in fairness to the defendants, but also in order that the attorney general may know just what he must or may prove as the criminal object of the conspiracy under the indictment, in order to get a conviction. If my understanding is correct as to the proper procedure to be followed in ruling on the question of the constitutionality of a statutory provision, its proper construction should first be determined so·far as that is pertinent to the question of its constitutionality. In the present cause, the basic question of construction, as I see it, is whether the crime of "larceny," as the equivalent of the crime of "stealing," is now, under the law of this state, applicable only to feloniously stealing, taking and carrying away the personal property of another or is applicable also to what were originally the distinct crimes of obtaining money or other property by false pretenses and of embezzlement. A study of the pertinent provisions of the statutes of this State has fully convinced me that the latter alternative is the correct one.

Chapter 397, sec. 15 of the general laws 1923, says: "Every person who shall obtain from another designedly, by any false pretence or pretences, any money, goods, wares, or other property with intent to cheat or defraud . . . shall be deemed guilty of larceny." Section 16 says: "Every officer, agent, clerk or servant . . . who shall embezzle . . . any money or other property . . . shall be deemed guilty of larceny." Section 17 is a special but similar provision as to an officer, agent or servant of any bank. In my judgment, the word "deem," as used in these sections, has its usual significance as synonymous with "considered," "treated as," and that the effect is just the same as if the language were "shall be guilty." The word "deem" is used in precisely this way in sec. 11 of the same chapter and that certainly describes the crime of "larceny" in the narrow sense, simply making it apply also to kinds of property which were not the subject of larceny at common law.

In my judgment, also, the obvious intent of the general assembly, in enacting these sections 15, 16, and 17 in substantially their present form, was not to create new crimes, since the crime of obtaining money or other property by false pretenses and the crime of embezzlement had long been recognized, elsewhere, if not here, but to merge them substantially with the previously long recognized crime of larceny, in its narrow sense, into a composite crime of larceny, which could be proved by proving facts that had previously constituted larceny, or facts that had previously constituted obtaining money or other property by false pretenses, or facts that had previously constituted embezzlement.

It is well known to all students of the criminal law that these three crimes were of the same general nature and that the distinctions between them were of a highly technical character. Exactly the same conduct by a man would be embezzlement or larceny according to whether or not he at the time held the property, which was involved, in a fiduciary capacity, or whether he had rightful possession of it or only custody. So also the special form of larceny known as "larceny by trick" was hardly distinguishable from obtaining money or other property by false pretenses. These questions were frequently very difficult or even impossible for prosecuting officers to determine beforehand or for juries and judges to determine at trials. The result was that the administration of justice was often greatly impeded and many miscarriages of justice occurred. It was undoubtedly to remedy this situation that the predecessors, in our statutes, of the above sections were enacted.

To make the matter doubly clear and to remove all reasonable doubt, the then existing chapter on criminal procedure was amended in 1915 by adding a section, which in its present form, as section 8 of chapter 407, reads as follows: "In prosecutions under sections fifteen, sixteen and seventeen of chapter three hundred ninety-seven of the general laws, it shall be sufficient to allege generally in the

complaint or indictment, a stealing of money to a certain amount, or property of a certain value, without specifying any particulars of such stealing, and on the trial evidence may be given of any such stealing, embezzlement, . . . or obtaining, . . . by false pretences" *etc.* during a certain period of time, without this being a variance.

I am fully convinced that by the enactment of these four sections, the legislative intent was clearly expressed that what formerly were or may have been the separate, but not very distinct, crimes of larceny, of obtaining money or other property by false pretences and of embezzlement, should be merged into one composite crime to be known as "larceny"; and that the word "steal" should thereafter, in criminal pleading and procedure in this State, be the equivalent of "commit larceny of," with "larceny" having the broad meaning of the above composite crime, which could be committed in any one of three ways. If this be correct, it follows that, under the form of indictment now before this court, the object of the conspiracy is charged as, and could be proved to be, the commission of larceny in any of the three ways above mentioned.

Assuming that this construction be adopted, as in my judgment it must be, if any really definite construction is to be determined, the next question to be considered is whether, with this construction, the form of indictment involved in this cause, and made permissible by the statutory provision involved herein, is contrary to the constitutional requirement that the defendants shall be informed of the nature and cause of the accusation against them.

A similar question has been decided by the highest court of Massachusetts under R. L., c. 218, §38, which was a reenactment of Stat. of 1899, c. 409, of that commonwealth. Both of those chapters dealt with criminal offenses, defined some of them and provided short forms of indictment, which were made permissible in the prosecution of such offenses. These provisions were again enacted in substantially the same language in general laws 1932, c. 277.

The enactments that came before the supreme judicial court of Massachusetts in several cases were as follows: "The words used in an indictment may, except as otherwise provided in this section, be construed according to their usual acceptation in common language; but if certain words and phrases are defined by law, they shall be used according to their legal meaning. The following words, when used in an indictment, shall be sufficient to convey the meaning herein attached to them: . . . Stealing.—Larceny.— The criminal taking, obtaining, or converting of personal property, with intent to defraud or deprive the owner permanently of the use of it; including all forms of larceny, criminal embezzlement and obtaining by criminal false pretences."

In my judgment, these enactments showed precisely the same legislative intent as the above quoted sections of the Rhode Island statutes. While the pertinent provision of the Massachusetts constitution, being art. XII of the Bill of Rights, is expressed differently from that in our constitution, it is even stronger, viz.: "No subject shall be held to answer for any crimes or offence until the same is fully and plainly, substantially and formally described to him." It has been held that these words only require "such particularity of allegation as may be of service to him in enabling him to understand the charge and to prepare his defence" and "such particulars as might be necessary to give him reasonable knowledge of the nature and grounds of the crime charged." Commonwealth v. Robertson, 162 Mass. 90, 96; Commonwealth v. Sinclair, 195 Mass. 100, 105.

An indictment for larceny in the short form made permissible by the Massachusetts statute, viz.: that the defendant "did steal one thousand dollars, of the property of the estate of John M. Downey, late of Warren, deceased," was sustained as constitutional in Commonwealth v. Kelley, 184 Mass. 320. In its opinion the court said: "Under this last statute the word 'steal' in an indictment becomes a term of art and includes the criminal taking or conversion

in either of the three ways above named, and hence the indictment is sustained, so far as respects the criminal nature of the taking or conversion, by proof of any kind of larceny, embezzlement or criminal taking by means of false pretences." The court held that any possible objection to the indictment on the ground of indefiniteness was met by the statutory requirement of a bill of particulars at the request of the defendant. A similar requirement is contained in our statutes in P. L. 1932, chap. 1954, clause 7.

The same conclusions were reached in *Commonwealth* v. *King*, 202 Mass. 379, where the court said: "The effect of this statute, certainly when taken in connection with the provisions of the statute now contained in R. L. c. 218, §§38, 40, is to put it beyond a doubt that the former crimes of larceny, embezzlement, and the obtaining of property by false pretences, are now merged into the one crime of larceny as defined by those statutes." In *Commonwealth* v. *Kozlowsky*, 238 Mass. 379, where the defendant was charged with an attempt to "steal" an automobile, the court, speaking through RUGG, C. J., at page 384, said: "The constitutionality of the criminal pleading act has been upheld so many times, it is no longer open to question." In many states, statutory provisions have been enacted similar to those involved in the cases above discussed, and in the cause now before this court, and I have found no cases in which they have been held unconstitutional.

In *State* v. *Davis* and *Quigg*, 39 R. I. 276, this court very carefully considered and held constitutional G. L. 1909, chap. 345, sec. 18, which, for purposes of procedure, merged together embezzlement and obtaining by false pretences, and dispensed with the previous common law requirement of specifying the particulars of the embezzlement or obtaining by false pretences. In the opinion a number of cases from other states are discussed with obvious approval, all sustaining the validity of such legislation under constitutional provisions like our own. The court also makes clear its view that while an indictment *must* give the accused

information of the general *nature* and *cause* of the crime charged against him, and information to that extent cannot be left to be supplied by a bill of particulars, yet all further information, which may fairly be held to be needed by the accused in preparing for trial, may constitutionally be left to be furnished by such a bill. The most recent statutes in this state do little more than carry one step farther the liberalization of procedure accomplished by the section considered in *State* v. *Davis* and *Quigg, supra.*

I do not maintain that the general assembly has the constitutional power to merge together, for the purpose of criminal procedure, crimes which are essentially different in their natures; but I am convinced that it has such power to merge together, for that purpose, such essentially similar crimes as larceny, obtaining money or other property by false pretenses, and embezzlement; and that it has thus merged them.

The rule of law stated in the opinion of the court, and supported by an overwhelming weight of authority in this country, should also be applied to this indictment and the statutory provision making it permissible, *viz.,* the rule that it is not necessary, in an indictment for conspiracy, to describe the crime intended to be committed, with the accuracy or detail essential in charging the commission of the crime itself. This is because the essence of the crime of conspiracy to commit a crime is the unlawful combination and agreement.

As above stated, the defendants in the indictment involved in this cause object that "the property of E. F." is not a sufficient description of the property which they are accused of conspiring to steal. As to the question thus raised, it has been stated in the opinion in *Lanasa* v. *State,* 109 Md. 602, that it is not necessary to the completion of the crime of conspiracy, that the conspirators should determine in advance the particular property which will be affected by the execution of the conspiracy. See also *People* v. *Arnold,* 46 Mich. 268; *Williamson* v. *United States,* 207 U. S. 425,

447. An indictment for an attempt to commit a crime and one for breaking and entering a building with intent to commit a crime are closely analogous to an indictment for conspiracy to commit a crime, and it seems to be well settled that in indictments of either of the former kinds, if the attempted or intended crime be larceny, it is sufficient to charge an attempt or intent to steal goods or "property" without further description. *Josslyn* v. *Commonwealth*, 6 Met. 236; *State* v. *Doran*, 99 Me. 329; *Bloch* v. *State*, 161 Ind. 276. 1 Wharton, Crim. Proc., (10th ed.) §471, 2 *idem*, §823. It therefore seems clear to me that the property which the defendants in the present cause are charged with conspiring together to steal is sufficiently described in the indictment.

In their oral argument, counsel for the defendants vigorously contended that under the indictment, as found, they would not, in case of an acquittal or conviction, be properly protected against a subsequent prosecution for the same offense. There is no specific discussion of this objection in their brief, and no authorities are cited in support of it. Whenever a former acquittal or conviction is pleaded as a defense and an issue is raised as to the identity of the offense or of the person concerned, a defendant has the right to resort not only to the record but also to oral testimony to establish the identity of person and the identity of the offense for which he was previously tried with the offence charged in the later prosecution. *State* v. *Davis* and *Quigg, supra*. I am satisfied that there is no merit in this objection by the defendants.

For the reasons above stated in this opinion, I agree fully with the final conclusion in the opinion of the court, that the portion of chapter 1954, sec. 3, clause 5, which is in question in this cause is not unconstitutional.

*John P. Hartigan, Atty. Gen., Michael De Ciantis, Third Asst. Atty. Gen.*, for State.

*George Hurley, Walter Adler, Walter V. Moriarty,* for defendants.