DECISION TRAVEL
This matter is before the court on written motion of the defendant Benedetto A. Cerilli, Jr., (hereinafter "Cerilli"), to dismiss Count 3 of the indictment (obtaining money, over five-hundred ($500.) dollars from Moneta Corporation and Wallace Corporation, by false pretenses in violation of § 11-41-1 and § 11-41-5 of the Rhode Island General Laws) for failure to state an offense and for perjury before the grand jury
Cerilli, amongst others, was indicted by the grand jury on April 13, 1994. The indictment alleges, as it pertains to the motion, the following:
 (1) Cerilli and Steven R. Salvatore (hereinafter Salvatore),[1] on or about October 6, 1987, incorporated and owned a majority interest in Jefferson Financial Group, Inc., (hereinafter "Jefferson Group");
 (2) in late October of 1987, Jefferson Group was chartered to operate a loan and investment bank in the State of Rhode Island, namely Jefferson Loan and Investment Bank (hereinafter "Jefferson Bank"), which was a wholly owned subsidiary of Jefferson Group;
 (3) that after Jefferson Bank began its business through and including February 16, 1990, Cerilli, Salvatore, Lorraine Harrop, (hereinafter "Harrop"),[2] and Peter A. Nevola (hereinafter "Nevola"),[3] all constituted a "criminal enterprise" for the purpose of using Jefferson Bank for their own use.
Cerilli was arraigned on the indictment on May 4, 1994, and filed his "motion to dismiss Count 3 for failure to state an offense" on June 29, 1995. Cerilli filed his "motion to dismiss (Counts 1 and 3) for perjury before the grand jury" on on September 16, 1996.[4] Cerilli's motion to sever his trial from that of Salvatore, Harrop, Nevola filed June 29, 1995 was granted by the court.
The parties filed their respective memoranda and the court heard argument on May 18, 1998 and reserved decision.
 BACKGROUND
According to the indictment filed in this matter, discovery supplied to the court for its consideration of Cerilli's motion, the memoranda filed by the parties, as well as oral arguments from the parties, the state alleges that the following took place.
Cerilli, an officer, as well as a majority stake holder of Jefferson Group, was at the same time vice-president of Newport Offshore Ltd., Inc. (hereinafter "Newport Offshore"). Jefferson Group on October 27, 1987 applied for, and was granted, a Charter by the State of Rhode Island to operate Jefferson Bank as a loan and investment bank.
In March of 1989, the Department of Business Regulations of the State of Rhode Island (hereinafter "DBR") performed an examination of Jefferson Bank. That examination revealed, in part, concerns with leases or promissory notes held by Jefferson Bank as collateral for loans from Jefferson Bank to others that lacked sufficient documentation, and, therefore, raised an issue of collectibility. That in turn raised concerns by DBR about the continuing financial viability of Jefferson Bank without additional capital. Following DBR's examination, Cerilli undertook to obtain additional capital for Jefferson Bank.
Arnold Kilberg (hereinafter "Kilberg"), in 1989 at the time of the alleged fraud by Cerilli, was "the president . . . of . . . . Moneta Capital Corporation. . . ." (Kilberg grand jury p. 522). Lloyd Granoff (hereinafter "Granoff"), in 1989 at the time of the alleged fraud by Cerilli, was ". . . president of Wallace Capital corporation . . ." (Granoff, grand jury testimony, p. 497). Moneta Capital Corporation (hereinafter "Moneta") and Wallace Capital Corporation (hereinafter "Wallace"), separate entities, both of whom were federally licensed small business investment companies (hereinafter "SBIC"), "make commercial loans to small businesses . . . hav[ing] trouble getting conventional financing at banks." (Granoff, grand jury testimony, p. 497).
Small business investment companies, such as Moneta and Wallace are licensed by the federal government through the Small Business Administration. (James T. Judge "J.T. Judge" grand jury testimony, p. 453). By regulation of the federal government, SBIC's cannot ". . . lend money to a bank. . . ." (J.T. Judge grand jury testimony, p. 456).
Prior to January 2, 1990, Moneta had made loans in excess of one million ($1,000,000.) dollars to Newport Offshore. (Kilberg grand jury testimony p. 528). Because of SBIC loan limit regulations, it was common to work with other SBIC's in packaging loans. (Kilberg grand jury testimony p. 528). In those instances, one SBIC would act as the "Lead Lender" in whose name the loan documentation would be prepared (Kilberg grand jury testimony pp. 529-30). Moneta's lawyer prepared the loan and collateral documents in this matter. (Kilberg grand jury testimony p. 531). Wallace was listed as "Lead Lender" in this matter. (Kilberg grand jury testimony p. 535). Kilberg testified before the grand jury that he had spoken with Cerilli about the loan to Newport Offshore. (Kilberg grand jury testimony p. 531).
Kilberg knew near the time of the discussion that Jefferson Bank was in need of funds as it had liabilities of over four million ($4,000,000) dollars in excess of assets, however, believed the loan was intended for Newport Offshore. (Kilberg grand jury testimony p. 533). He knew that SBIC's were prohibited from making loans, for relending purposes. (Kilberg grand jury testimony p. 533). He had been employed as an accountant for Jefferson Loan Investment for the period ending July 31, 1989. (Kilberg grand jury testimony pp. 543-44). As the accountant for Jefferson Bank, after reviewing the records of the institution at the request of Cerilli, Kilberg placed a "going concern opinion" which represents a "red-flag" to interested investors about the condition of the business. (Kilberg grand jury testimony p. 546).
Angela Cressman (hereinafter Cressman) testified before the grand jury that beginning in March of 1989 she was employed as the controller at Jefferson Loan Investment Bank. That part of her duties was to work with auditors for the Jefferson Bank. (Cressman grand jury testimony p. 171). She also knew that Kilberg was a possible purchaser of Jefferson Bank sometime between February and July of 1990 (Cressman grand jury testimony pp. 185-86), and the he would ask for financial statements and inquire of her about the status of outstanding loans. (Cressman grand jury testimony p. 185).
The state alleges that Cerilli devised a scheme to circumvent the lending money to a bank prohibition imposed on SBIC's by which the sum of three hundred thousand ($300,000) dollars borrowed by Newport Offshore from Moneta and Wallace without Moneta's and Wallace's prior knowledge was ultimately deposited into Jefferson Bank.
A fact, advanced by the state and not contested at this point by Cerilli, is that the funds Cerilli received on December 28, 1989 as attorney for and on behalf of Newport Offshore were never deposited into Newport Offshore's account. Rather they were deposited into Cerilli's personal account and transferred immediately to Jefferson Bank to shore up Jefferson Bank and meet a condition imposed by DBR that at least two hundred eight-five thousand ($285,000) dollars in additional capital was required to be invested in Jefferson Bank by January 1, 1990 or Jefferson Bank would be closed for business.
In his written memorandum Cerilli argues that dismissal of Count 3 of this indictment is compelled " . . .on three separate grounds: first, that it is facially defective in that it fails to assert an essential element of R.I.G.L. 1956 (1994 Reenactment) § 11-41-4; second, that, as explicated by the bill of particulars filed in this case, the indictment fails to state an offense; and, third, that this case can no longer be fairly prosecuted as a matter of due process of law because it is founded upon accusation which the state now acknowledges was probably perjurious.
DISCUSSION
I. INDICTMENT IS FACIALLY DEFECTIVE IN THAT IT FAILS TO ASSERT AN ESSENTIAL ELEMENT OF R.I.G.L. 1956 (1994 REENACTMENT) § 11-41-4.
It is a fundamental precept of our law that ". . . the defendant(s) . . . be notified by the indictment of the nature and cause of the accusation . . ." R.I. Const. Art. I § 10. State v.Smith 56 R.I. 168, 177 (R.I. 1936)
§ 11-41-4. of the General Laws read as follows in pertinent part:
Obtaining property by false pretenses or personation. — Every person who shall obtain from another designedly, by any false pretense or pretenses, any money, . . . with intent to cheat ordefraud, . . . . shall be deemed guilty of larceny." (emphasis supplied)
The indictment returned by the Grand Jury in this matter reads as follows:
 "Benedetto A. Cerilli, Jr., Alias John Doe, on or about January 2, 1990, in the County of Providence, did obtain and steal money, being of a value of three hundred thousand ($300,000.) dollars, more or less, from Moneta Capital Corporation and Wallace Capital Corporation, designedly by false pretenses in that representations were made by Benedetto A. Cerilli, Jr., Alias John Doe, to Moneta Capital Corporation and Wallace Capital Corporation that the loan was being made to and for the benefit of Newport Offshore, Ltd. when in fact the proceeds of the loan were used for the benefit of Jefferson Loan and Investment Bank, in violation of § 11-41-4 and 11-41-5 of the Rhode Island General Laws." (emphasis added)
As the indictment fails to allege that Cerilli "with intent to cheat or defraud" did obtain the funds he argues the indictment should be dismissed.
Section 12-12-1.4 of the General Laws 1956 (1981) provides as follows in pertinent part:
 "An indictment . . . shall be a plain, concise, and definite written statement of the offense charged. An indictment . . . which provides the defendant and the court with adequate notice of the offense being charged shall be sufficient if the offense is charged either: (a) by using the name given to the offense in terms of either the common law or by statute, or (b) by stating the definition of the offense in terms of substantially the same meaning."
The state argues that "[O]btaining Under False Pretenses has long been recognized as a common law offense in Rhode Island." (State Response to Defendant's Motion To Dismiss Count III, pg. 3.) Citing State v. McMahon, 49 R.I. 107, 108, 140A at 359, 360 (R.I. 1928). This argument is squarely at odds with the recent holding where the court stated in unequivocal language that ". . . although it is true that the crime of obtaining property by false pretenses is related to larceny, false pretenses never existed at common law, but is solely a creature of statute." State v.Markarian, 551 A.2d 1178, 1181 (RI 1988). As such, the prior authorities which have held that by using the name given to an offense at common law is sufficient to overcome the similar claims raised here by Cerilli are not supportive of the state's argument. State v. Smith, 56 R.I. 168, 184 A. 494 (R.I. 1936);State v. Lanigan, 528 A.2d 310, 319 (R.I. 1987).
Notwithstanding this failing, the indictment does inform Cerilli and the court by reference to the statute, R.I.G.L.11-41-4, that he is accused of committing a specific offense. "It is well settled that an indictment must inform the person charged of the elements of the offense, 'whether in the definition of common law or in the elements set forth in the statute'" State v.Mattera, 671 A.2d 1227, 1228 (R.I. 1996); State v. Cassey, 543 A.2d. 670, 675 (R.I. 1988), State v. Jorjorian, 82 R.I. 334,107 A.2d 468 (1954).
By reference to the statute 11-41-4, Cerilli is informed that he cannot be convicted unless the state proves not only that he obtained money by false pretenses, but in addition, that he did so with intent to cheat or defraud. For this reason Cerilli's motion to dismiss the indictment on the ground of invalidity on its face for failure to include the element of intent is denied.
Alternatively, Cerilli argues in his reply memorandum, at page 2, ". . . this Indictment by charging both that defendant did steal and that he obtained by false pretenses, is an accusatory hermaphrodite possessing features of both 11-41-1 and 11-41-4. Such a charge deprives defendant of constitutional notice as it is unclear just what the State will be required to prove."
11-41-1 entitled "Stealing as larceny" is the codification of the crime of Larceny as it was known at common law. State v.Smith, 56 R.I. 168, 184 A. 494 (R.I. 1936). "[F]or larceny, one must intend to deprive the owner of the possession of his property either permanently or for an unreasonable length of time . . ." LaFave and Scott, Handbook on Criminal Law, § 88, p. 637 (1972 edition). Conversely, the offense of "obtaining by false pretenses" does not require proof that the defendant intended to permanently deprive the victim of their property.State v. Fiorenzano, 690 A.2d 857, 859 (R.I. 1997). State v.LaRoche, 683 A.2d 989 (R.I. 1996).
In State v. Smith, the court held that only the general assembly, within constitutional limits, may determine the elements of conduct that they intended to proscribe. Smith, R.I. at 177. Here it appears the state is attempting to usurp the authority of the general assembly, by combining two distinct crimes, to establish the elements that constitutes the crime of obtaining money by false pretenses. This the state cannot be permitted to do.
To allow this charge as drafted to stand, this matter may proceed to trial without Cerilli knowing precisely what element of intent it is he has to defend against whether the elements of intent required to be proved for "larceny" or the element of intent for "obtaining under false pretenses."
This argument is further buttressed where Cerilli demonstrates that the state in responding to his claim that the bill of particulars has asserted that the defendant obtained money by false pretenses by signing ten specific documents. Billof Particulars included at App. E[5].
Cerilli is correct in arguing that at trial the state cannot convict him based upon neither an offense not charged in the indictment nor in response to the bill of particulars. The factual allegations within the bill of particulars limits the state's case at trial as does the factual allegations in the indictment. State v. Lanigan, 528 A.2d 310, 319 (1987). As the state has failed to delineate in its response to Cerilli's bill of particulars, the particulars to support its assertion that Cerilli stole from Moneta and Wallace, the state will be precluded from introducing at trial any evidence which attempts to prove that crime.
 PERJURY OCCURRING BEFORE GRAND JURY
Cerilli urges the court to dismiss this indictment based upon the probable perjured testimony of Kilberg before the grand jury. Following his arraignment, Cerilli sought by way of a "Motion for Disclosure of Crimes, etc." filed on June 21, 1995, exculpatory evidence within the state's possession. On March 27, 1997, the state filed its "Motion for Disclosure Order" wherein it stated the following: "After Kilberg testified the General Accounting Office published a report entitled `SBA Monitoring Problems Identified in Case Studies of 12 SBIC and SSBIC ("Report").'"
According to the state, the "Report" provided the state with information that "Kilberg may have engaged in other financial transactions of a nature similar to the events in this case where SBA funds may have been improperly diverted and which, if true, would raise serious questions about the truthfulness of his anticipated testimony in this matter." The state, although it has not conceded that Kilberg testified untruthfully before the grand jury, nevertheless notified Cerilli that they no longer intend to call Kilberg as a witness in this proceeding.
Following the lead of federal authority Cerilli urges the court, as one alternative, to dismiss the indictment and require the state to resubmit evidence to another grand jury without the probable perjured testimony. United States v. Udziela,671 F.2d 995 (7th Cir. 1982) cert. denied, 457 U.S. 1135 (1982). In this matter, unlike the facts present in Udziela, no admission by Kilberg nor a judicial determination has been made that Kilberg's testimony before the grand jury was false.
Cerilli urges the court to consider another alternative based on Udziela that is for this court to "undertake an independent view of the grand jury evidence to determine whether probable cause can be established absent Arnold Kilberg's testimony" (p. 24 Cerilli's memoranda). While the court there held that trial courts prospectively could conduct an in camera inspection of the grand jury transcripts for a determination if other sufficient evidence supported the indictment, and made its own review,Udziela at 1001, our Supreme Court has adopted the standard enunciated in United States v. Costello, 350 U.S. 359, 363, (1956) that "an indictment returned by a legally constituted and unbiased grand jury, like any information drawn by the prosecutor, if valid on its face, is enough to call for trial of the charges on the merits." State v. DiPrete, 682, A.2d 1373, 1375 (R.I. 1996). State v. Simpson, 658 A.2d 522, 524 (R.I. 1995).
In the case principally relied on by Cerilli, United Statesv. Basurto, 497 F.2d 781 (9th Cir. 1974), the witness (Barron) admitted to the prosecutor that he had committed perjury in important material facts. Additionally, only one other witness had testified before the grand jury as to the facts supporting the charge. Under those facts and the principal of due process, the court held that the prosecutor had a duty to inform both the court and defense counsel. Further, if the perjury is material, to inform the grand jury so that appropriate action could be taken. Basurto, F.2d at 785-86.
No other federal circuit court has adopted that holding ofBasurto. In United States v. Adamo, 742 F.2d 927 (6th Cir. 1984), while agreeing with the portion of Basurto which requires a prosecutor to refrain from knowingly using perjured testimony at any point during the prosecution of the matter the court did not adopt either of the alternatives that Cerilli advances, i.e. dismiss present indictment, resubmit to a new grand jury or dismissal by the court. Adamo, F.2d at 941.
In United States v. Flores-Rivera, 56 F.3d 319 (1st Cir. 1995), the court, applying the holding in Bank of Nova Scotia v.United States, 487 U.S. 250, 108 S.Ct. 2369, 101 L.Ed 2nd 228 (1988), that federal district court could not dismiss an indictment for errors in grand jury proceedings unless such errors prejudiced the defendant, refused to reverse defendants conviction based upon alleged perjured testimony before the grand jury. F.3d at 328.
Absent either (1) the state dismissing the indictment, (2) a determination that Kilberg's testimony was false as to a material matter, or (3) an admission by Kilberg that his testimony was false, this Court cannot dismiss the indictment based upon probable perjury before the grand jury.
Cerilli's motion to dismiss is denied.
[1] Salvatore, after trial before a jury on July 2, 1997, was acquitted of the offense named in Count 2 of the indictment deriving income from racketeering activity, and acquitted of the offense named in Count 4 of the indictment, obtaining money over five-hundred ($500.) dollars by false pretenses. Salvatore, after trial before a jury on July 2, 1997, was convicted of the offense named in Count 5 of the indictment that, as an agent of Jefferson Bank, he accepted a bribe, and convicted of the offense named in Count 9 of the indictment, filing a false document.
[2] Harrop, after trial before a jury on July 2, 1997, was acquitted of the charges brought against her in Count 2 of the indictment, deriving income from racketeering activity, and Count 4, obtaining money over five-hundred ($500) dollars by false pretenses.
[3] Nevola, after trial before a jury on July 2, 1997, was acquitted of the charges brought against him in Count 2 of the indictment, deriving income from racketeering activity, and Count 6 of the indictment charging him as an agent of Rhode Island Share and Deposit Indemnity Corporation (RISDIC), with accepting a bribe. Nevola, after trial before a jury, was convicted of the offense charged in Count 7, perjury before the statewide grand jury.
[4] Cerilli was charged in Count 1 of the indictment with "racketeering" activity in a "criminal enterprise" comprised of Cerilli, Salvatore, Harrop, and Nevola. Following the acquittals of Salvatore, Harrop, and Nevola of charges related to their alleged involvement in the same "criminal enterprise," the state on October 29, 1997 dismissed Count 1 of this indictment against Cerilli pursuant to Rule 48 (a) of the Rhode Island Rules of Criminal Procedure.
[5] Cerilli argues none of these ten documents contain any specific factual misrepresentation." At this stage of the proceeding, the court cannot decide the facts. As prior decisions in Rhode Island have established the "primary purpose of a bill of particulars" "is to supply the defendant with such particulars as are necessary in order that judicial surprise is avoided at trial." State v. Gerald Brown, 626 A.2d 228, 231 (R.I. 1993).State v. Collins, 543 A.2d 641, 654, (R.I. 1988) citing LaFave 
Israel, Criminal Procedure, Section 19.2(f) at 717-18 (1985).